UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 07-12152 |
| NORTHCASTLE, LTD.<br>Tax Id. No. xx-xxx1928 | CHAPTER 11 |
| DEBTOR | |

| | |
|---|---|
| *Jointly Administered with* | CASE NO. 07-12151 |
| M.B.S. MANAGEMENT SERVICES, INC.[1]<br>Tax Id. No. xx-xxx7655 | CHAPTER 11 |
| DEBTOR | |

## DISCLOSURE STATEMENT

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE CHAPTER 11 PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THERE WILL BE A HEARING ON THIS DISCLOSURE STATEMENT TO DETERMINE IF IT PROVIDES ADEQUATE INFORMATION. IF THE DISCLOSURE STATEMENT IS APPROVED BY THE BANKRUPTCY COURT, THERE WILL BE A SUBSEQUENT HEARING TO CONSIDER CONFIRMATION OF THE PLAN. ALL CREDITORS AND EQUITY INTEREST HOLDERS WILL BE NOTIFIED OF THE DATE OF SUCH CONFIRMATION HEARING.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

---

[1] Northcastle, Ltd. (07-12152), MBS-Woodland Hills, Ltd. (07-12153), MBS-Country Village, Ltd. (07-12154), MBS-The Windward, Ltd. (07-12155), MBS-The Leeward, Ltd. (07-12156), MBS-Serrano, Ltd. (07-12157), MBS-Fountains of Tomball, Ltd. (07-12158), MBS - South Point Apartments (07-12283), MBS - Lodge at Stone Oak, Ltd. (07-12292), MBS-Claremore, Ltd. (07-12397), MBS-Colonnade, Ltd. (07-12398), MBS-Equinox on the Park, Ltd. (07-12319), MBS-Forest Cove, Ltd. (07-12363), MBS-Indian Hollow, Ltd. (07-12400), MBS-Las Ventanas, Ltd. (07-12399), MBS-Mirada, Ltd. (07-12401), MBS-Sage Creek, Ltd. (07-12402), MBS-Walnut Creek, Ltd. (07-12403), MBS-Bristol Heights, Ltd (08-10160), MBS-Steeplecrest, Ltd. (08-10162) and MBS-The Heritage, Ltd. (08-10163) all of whom, together with M.B.S. Management Services, Inc. are collectively referred to as the "Jointly Administered Debtors," and are being jointly administered under case no. 07-12151 pursuant to court orders [P-54, P-116 and P-273], with the exception of MBS-Bristol Heights, Ltd (08-10160), MBS-Steeplecrest, Ltd. (08-10162) and MBS-The Heritage, Ltd. (08-10163), with respect to which cases motions for joint administration are pending but have not been acted upon.

## EXHIBITS TO DISCLOSURE STATEMENT

EXHIBIT D-1        Chapter 11 Plan of Reorganization for Northcastle, Ltd.

EXHIBIT D-2        Liquidation Analysis

EXHIBIT D-3        Financial Projections

EXHIBIT D-4        Partnership Agreement

EXHIBIT D-5        Purchase and Sale Agreement and Amendment to Contract

# INTRODUCTION

Northcastle, Ltd. ("Northcastle" or "Debtor"), or on and after the Effective Date of the Plan, the "Reorganized Debtor", has filed a Chapter 11 Plan of Reorganization (the "Plan") [P-____]. The Plan is attached to this Disclosure Statement as Exhibit D-1. The Debtor submits this Disclosure Statement (this "Disclosure Statement"), pursuant to Section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), to holders of Claims against and Partnership Interests in the Debtor, in connection with (i) the solicitation of acceptances or rejections of the Plan (together with any modification, amendment or supplement, of the Plan), and (ii) the hearings to consider approval of the Plan to be scheduled before the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court") on the date(s) set forth in the accompanying notice.

In the event of a conflict or difference between the definitions used, and provisions contained, in this Disclosure Statement and the Plan, the definitions and provisions contained in the Plan shall control (except where otherwise specifically noted).

## I. PURPOSE AND SUMMARY OF THE PLAN

**THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW AND ANALYZE THE PLAN IN ITS ENTIRETY.**

The primary purpose of the Plan is to transfer substantially all of the assets of the Debtor through an orderly process and to pay or satisfy through an assumption the Claims against and Partnership Interests in the Debtor from the proceeds of the transfer of the Property of the Debtor in the following order:

1) Allowed Secured Lender Claims;

2) Allowed Administrative Claims;

3) Allowed Camp Roofing, Inc. Mechanic's Lien Claims;

4) Allowed Fun-n-Sun Pools of Austin, Inc. Mechanic's Lien Claims;

5)      Allowed Landscapes USA Mechanic's Lien Claims;

6)      Allowed Other Secured Claims;

7)      Allowed Priority Tax Claims;

8)      Allowed Unsecured Claims; and

9)      Allowed Partnership Interests.

## II. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**A.**      The Plan contemplates payment of all Allowed Claims against, and satisfaction of all Allowed Interests, in the Debtor as follows:

**1.**      As provided in the Plan, in the event of a transfer of the Sale Assets for Cash, the Allowed Secured Lender Claims in Class 1 (if the holder of the Class 1 Claims and the Debtor agree on the payment of default interest, yield maintenance premiums and costs and charges under Section 506 of the Bankruptcy Code) shall be paid in full in Cash by the Reorganized Debtor from the Purchase Price on the Effective Date, or prior pursuant to a Bankruptcy Court order. If no agreement is reached, the Debtor will de-accelerate the Secured Lender Loan out of the Purchase Price or cash collateral and will make monthly payments to the holder of the Class 1 Claims based upon the following terms: **(a)** an interest rate of two (2) basis points over the ten (10) year Treasury Rate as such rate existed on the Effective Date, or such other rate determined by the Bankruptcy Court as will satisfy the requirements of 11 U.S.C. §1129(b)(2)(A); **(b)** a due date of all accrued, unpaid interest on the maturity date existing under the Secured Lender Loan Documents in favor of the holder of the Class 1 Claim and **(c)** a lien on the Plan Funds equal to the Allowed Secured Claim of the holder of the Class 1 Claim as such Claim exists on the Effective Date. The Debtor shall possess the right to prepay the Class 1 Claim at anytime as provided in the Secured Lender Loan Documents; or

**2.**     In the event the transfer of the Sale Assets is an assumption, the Reorganized Debtor shall pay the holder of the Class 1 Claims an amount of Plan Funds sufficient to de-accelerate the Secured Lender Loan under 11 U.S.C. §§1123(d) and 1124(2) and the Purchaser will pay the Assumed Lender Amount as if no default had occurred in accordance with the terms of the Secured Lender Loan Document, and the Secured Lender will retain its liens against the Sale Assets to secure repayment of the Allowed Secured Lender Claims.

**3.**     Other than the Allowed Secured Lender Claims, the remaining Claims against and Interests in the Reorganized Debtor will be paid or satisfied from the Plan Funds. The Plan Funds shall be applied and/or distributed in the following order and manner and in accordance with the terms set forth below, if the holder of the Class 1 Claims is paid in full on or prior to the Effective Date or the Purchaser assumes payment of the Assumed Loan Amount:

**(a)**     First, **(1)** to the payment (or reserve for payment) in full of all Allowed Administrative Claims, including but not limited to: **(A)** the Claims of all professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date, as such Claims are allowed by Final Order of the Bankruptcy Court; **(B)** all statutory fees due and payable under 28 U.S.C. §1930, as determined by the Bankruptcy Court at the Confirmation Hearing, and **(C)** all Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date; and **(2)** second, to the payment (or reserve for payment) in full of all Allowed Mechanic's Lien Claims in Classes 2 through 4, and to the payment of all Allowed Other Secured Claims in Class 5; and **(3)** third, to the payment in full (or reserve for payment) of all Allowed Priority Tax Claims.

**(b)**     After payment (or reserve for payment) has been made to the holders of Allowed Claims as described in Article IV(a)(1)-(3)(a), any remaining Plan Funds shall be used (or

reserved for payment) to pay in full the Reorganized Debtor's post-Effective Date fees and expenses, including but not limited to wind-down costs and other expenses of the Reorganized Debtor, and the completion of all other actions of or by the Reorganized Debtor contemplated in the Plan or authorized by the Partnership Agreement.

(c)     After payment (or reserve for payment) in accordance with the Plan has been made to the holders of Allowed Claims as described in Article IV(a)(1)-(3)(a), and to the payment (or reserve for payment) of the Debtor's post-Effective Date costs and expenses, as described in Article IV(3)(b), the remaining Plan Funds shall be applied and/or distributed (or reserved for payment) Pro Rata to the holders of Allowed Unsecured Claims in Class 6 up to the Allowed Amount thereof.

(d)     After payment (or reserve for payment) has been made as described in Article IV(3)(a)(1)-(3)(a)-(c) any remaining Plan Funds shall be distributed (or reserved for distribution payment) to payment of Debtor's Class 7 Partnership Interests in accordance with the Partnership Agreement.

Specifically, payment will be made, as follows:

| CLASS OR DESIGNATION | TREATMENT |
| --- | --- |
| **Unclassified. Allowed Administrative Claims.** | Unimpaired. Not entitled to vote.<br><br>**a. Generally.** Subject to the bar date provisions herein, the Disbursing Agent shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment.<br>**b. Payment of Statutory Fees.** On or before the Effective Date, the Disbursing Agent shall pay all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing in Cash in full.<br>**c. Bar Date for Administrative Claims.**<br>    **i. General Provisions.** Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be Filed no later than thirty (30) days after the Effective Date. Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to File a request for payment of such claims and that do not File such requests by such bar date shall be forever barred from |

| | |
|---|---|
| | asserting such claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property. Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.<br><br>**ii. Professionals.** All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.<br><br>**iii. Ordinary Course Liabilities.** Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims. Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.<br><br>Estimated percentage recovery: 100% |
| **Unclassified: Allowed Priority Tax Claims.** | Unimpaired. Not entitled to vote.<br><br>Each holder of an Allowed Priority Tax Claim shall receive one of the following three treatments, as determined by the Reorganized Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim; (b) regular installment payments in Cash of a value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim, plus interest at such annual rate as is determined in accordance with section 511 of the Bankruptcy Code, over a period ending not later than five (5) years after the Petition Date; or (c) on such other terms and conditions as agreed to by the Reorganized Debtor and the holder of the Allowed Priority Tax Claim. Holders of Priority Tax Claims shall not be entitled to receive any payment on account of penalties with respect to or arising in connection with, such Priority Tax Claims. The Reorganized Debtor may prepay, without penalty, at anytime any Allowed Priority Tax Claim treated in accordance with option (b) above.<br><br>Estimated percentage recovery: 100% |
| **Class 1. Secured Lender Claims.** | Impaired. Entitled to vote.<br><br>Estimated percentage recovery: 100% |
| **Class 2. Camp Roofing, Inc. Mechanic's Lien Claim.** | Impaired. Entitled to Vote.<br><br>Estimated percentage recovery: 100% |
| **Class 3. Fun-n-Sun Pools of Austin, Inc. Mechanic's Lien Claim.** | Impaired. Entitled to Vote.<br><br>Estimated percentage recovery: 100% |
| **Class 4: Landscapes USA Mechanic's Lien Claim.** | Impaired. Entitled to Vote. |

| | Estimated percentage recovery: 100% |
|---|---|
| **Class 5: Other Secured Claims.** | Impaired. Entitled to Vote. |
| | Estimated percentage recovery: 100% |
| **Class 6: Unsecured Claims.** | Impaired. Entitled to Vote. |
| | Estimated percentage recovery: 100% |

## B. INTERESTS UNDER THE PLAN

The following is a summary of the classification and treatment of Interests under the

Plan:

| | |
|---|---|
| **Class 7: Partnership Interests.** | Impaired. Entitled to Vote. |
| | Estimated Recovery: Receive Pro-Rata Payment of Partnership Interests |

## III. GENERAL OVERVIEW AND BACKGROUND INFORMATION

## A. BACKGROUND AND GENERAL INFORMATION

### 1. Overview

In 1986, a number of corporations (collectively, the "MBS Companies") were organized to

provide institutions, corporations and investors with a broad and complementary array of real estate-

oriented services. The MBS Companies combined affiliates that specialize in research, acquisitions,

asset management, property management, consulting, brokerage and other related real estate services

to excel in acquiring multifamily properties.

In 1987, MBS Realty Investors, Ltd. ("MBSRI"), a Louisiana Partnership in commendam,

was formed as a real estate holding company. MBSRI specializes in the formation of partnerships to

acquire, improve, and operate these multifamily properties for investment purposes. MBSRI has

formed multiple partnerships, including that of the Debtor.

In 1994, MBSRI formed the Debtor, a single asset real estate partnership, in order to acquire

a certain multifamily residential apartment community in Austin, Texas. As a single asset real estate

partnership, the Debtor's primary asset is the multifamily residential apartment complex owned by

the Debtor (the "Property").

Currently, the Debtor is owned by various investors who hold limited and general Partnership Interests in the Debtor.

To assist the Debtor with leasing, maintenance coordination, and on-site and regional management of the apartment complex, the Debtor entered into contracts with M.B.S. Management Services, Inc. ("MBS Management"). MBS Management is an asset management company specializing in the day to day physical property management of the multifamily property. However, the property owned by the Debtor is no longer being managed by MBS Management, but is now being managed by MBS Realty Investors, Ltd.

### 2.    Debtor's Corporate Structure

M.B.S. Financial Corporation ("MBSFC") is owned by Michael and Carol Smuck, and M.B.S. Investments, Inc. ("MBSI") is owned by MBS Financial Group, Inc. which is also owned by Michael and Carol Smuck. MBSFC and MBSI each own 50% of M.B.S. Capital Planning, Inc.("MBSCP"), a Louisiana corporation, which in turn, owns 98% of MBSRI, the entity that formed the Debtor. Michael Smuck owns the remaining 2% of MBSRI. MBSCP is the general partner of MBSRI, and Michael Smuck is the President of MBSCP.

The General Partner of the Debtor, 8100 Mopac, L.L.C., is a Texas limited liability company controlled by its Managing Member, Michael Smuck. MBSRI is also a Member of the General Partner.

The Limited Partners of the Debtors are 1992 Houston Partnership, L.P. and Douglas C. Chiles.

### 3.    Operating History

The following table details the Debtor's operating history for the years 2005, 2006 and 2007. The information in the following table is from a December 28, 2007 appraisal of the Property prepared by CB Richard Ellis.

| Year-Occupancy | 2005 | | 92.0% | | 2006 | | 92.0% | | 2007 Annualized | | 81.0% | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | Total | %EGI | $/Unit | $/SF | Total | %EGI | $/Unit | $/SF | Total | %EGI | $/Unit | $/SF |
| Potential Rental Income | $1,232,576 | 95.0% | $7,250 | $7.91 | $1,214,809 | 95.0% | $7,146 | $7.80 | $1,019,146 | 94.4% | $5,995 | $6.54 |
| Other Income | 31,603 | 2.4% | 186 | .20 | 32,296 | 2.5% | 190 | .21 | 27,305 | 2.5% | 161 | 0.18 |
| RUBS/Utility Income | 33,166 | 2.6% | 195 | .21 | 31,093 | 2.4% | 183 | .20 | 33,674 | 3.1% | 198 | 0.22 |
| Effective Gross Income | $1,297,345 | 100% | $7,631 | $8.33 | $1,278,199 | 100.0% | $7,519 | $8.21 | $1,080,125 | 100.0% | $6,354 | $6.94 |
| | | | | | | | | | | | | |
| Expenses | | | | | | | | | | | | |
| Real Estate Taxes | $169,862 | 13.1% | $999 | $1.09 | $156,796 | 12.3% | $922 | $1.01 | $155,071 | 14.4% | $912 | $1.00 |
| Property Insurance | 36,177 | 2.8% | 213 | .023 | 53,437 | 4.2% | 314 | 0.34 | 46,999 | 4.4% | 276 | 0.30 |
| Utilities | 99,704 | 7.7% | 586 | .064 | 88,929 | 7.0% | 523 | 0.57 | 62,501 | 5.8% | 368 | 0.40 |
| Trash Removal | 11,848 | 0.9% | 70 | 0.08 | 13,969 | 1.1% | 82 | 0.09 | 11,138 | 1.0% | 66 | 0.07 |
| Administrative & General | 8,008 | 0.6% | 47 | 0.05 | 10,348 | 0.8% | 61 | 0.07 | 11,455 | 1.1% | 67 | 0.07 |
| Repairs & Maintenance | 30,425 | 2.3% | 179 | 0.20 | 30,670 | 2.4% | 180 | 0.20 | 28,325 | 2.6% | 167 | 0.18 |
| Landscaping & Security | 19,756 | 1.5% | 116 | 0.13 | 18,050 | 1.4% | 106 | 0.12 | 20,110 | 1.9% | 118 | 0.13 |
| Management Fee | 51,619 | 4.0% | 304 | 0.33 | 52,800 | 4.1% | 311 | 0.34 | 45,257 | 4.2% | 266 | 0.29 |
| Payroll | 170,478 | 13.1% | 1,003 | 1.09 | 154,869 | 12.1% | 911 | 0.99 | 127,726 | 11.8% | 751 | 0.82 |
| Advertising & Promotion | 14,606 | 1.1% | 86 | 0.09 | 12,440 | 1.0% | 73 | 0.08 | 10,942 | 1.0% | 64 | 0.07 |
| Other | - | 0.0% | - | - | - | 0.0% | - | - | - | 0.0% | - | - |
| Reserves for Replacement | - | 0.0% | - | - | - | 0.0% | - | - | - | 0.0% | - | - |
| Operating Expenses | $612,483 | 47.2% | $3,603 | $3.93 | $592,308 | 46.3% | $3,484 | $3.80 | $519,525 | 48.1% | $3,056 | $3.34 |
| Net Operating Income | $684,862 | 52.8% | $4,029 | $4.40 | $685,891 | 53.7% | $4,035 | $4.40 | $560,601 | 51.9% | $3,298 | $3.60 |

Annualized Amounts Represent 6 months
Source: CBRE Appraisal, December 2007

## 4. The Property

Northcastle Apartment Homes were built in 1970. The Property is comprised of 18 two-story buildings located on 7.36 acres and a gross building area of 159,696 square feet. The Property contains 170 units with an average unit size of 916 square feet. The current occupancy is 53.5% and the stabilized occupancy is 91%. The Property is in poor condition. This information is from an appraisal dated December 28, 2007 prepared by CB Richard Ellis. Exhibits containing detailed information about the Property are attached to the Disclosure Statement as part of Exhibit D-4.

## B. THE DEBTOR'S MANAGING MEMBER

The Managing Member of the Debtor is MBS Realty Investors, Ltd.

## C. THE DEBTOR'S DEBT STRUCTURE

The Debtor executed a promissory note dated June 2, 2004 in the original principal amount of $8,175,000.00, payable to PNC Bank, N.A. (the "Note"). Said Note is secured by the June 2, 2004 Deed of Trust and additionally secured by an Assignment of Rents and Leases. The Note and these liens were assigned to Wells Fargo Bank, N.A., Trustee for the registered holder of Credit Suisse

First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-C3. The Debtor also filed a Financing Statement on June 8, 2004 granting unto PNC Bank, N.A. as creditor and secured party, a security interest in the subject property. The Financing Statement (which, along with the Note, Deed of Trust and Assignment of Rents and Leases are hereafter referred to as the "Secured Lender Loan Documents") was assigned to Wells Fargo Minnesota, N.A. Trustee, on January 23, 2006. Debtor currently owes approximately $8,294,303 on the Note.

Additional debt of the Debtor consists of the following: approximately $2,284 in Mechanic's Lien Claims; estimated Administrative Claims of approximately $300,000.00; approximately $41,468 in Priority Tax Claims; and approximately $743,610 in Unsecured Claims.

**D. EVENTS LEADING TO THIS CHAPTER 11 CASE**

There were a combination of events that precipitated the Debtor's Chapter 11 bankruptcy filing, including the inflated price paid for the Property when the Debtor purchased it for $6.1 million in 1994, the obligations incident to financing and the equity raise provided to the Partners.

Further, the devastation caused by Hurricane Katrina in 2005 significantly damaged the daily operations of MBS Management, such that, for a period of time, its business functions, and thus by extension, the business functions of the Debtor, were severely curtailed. The displacement of MBS Management from its business location in New Orleans caused a tremendous disruption in the normal operations of the Debtor, such that revenue was not timely collected, payments of operating expenses and debt service were not timely made, and normal daily management and repair of the properties were not timely undertaken.

As a result of all of the foregoing, the Debtor started to experience financial difficulties that hindered its abilities to timely comply with its secured debt obligations. In light of these factors, the

Debtor determined that it would be necessary to address and resolve its operational issues and financial difficulties by filing this Chapter 11 Case.

In order to avoid foreclosure and to protect what the Debtor believes to be value for creditors and stakeholders, the Debtor filed its petition for reorganization relief in the Bankruptcy Court.

## E.   SIGNIFICANT POST-PETITION EVENTS

On November 5, 2007, Debtor filed for relief under Chapter 11 of the Bankruptcy Code. ("Petition Date"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtor's bankruptcy case is being jointly administered with *In re M.B.S. Management Services, Inc.,* Case No. 07-12151.

### 1.   Continuation of Business; Stay of Litigation.

Following the Petition Date, the Debtor has continued to operate as a debtor-in-possession with the protection of the Bankruptcy Court. The Bankruptcy Court has certain supervisory powers over the Debtor's operations during the pendency of the Chapter 11 Case, including the power to approve any transactions that are outside the ordinary course of the Debtor's business.

An immediate effect of the filing of a bankruptcy case is the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all litigation against the Debtor. This injunction will remain in effect until the Effective Date unless modified or lifted by order of the Bankruptcy Court.

### 2.   Joint Administration

On November 5, 2007, MBS Management filed for bankruptcy relief in the Bankruptcy Court, Case No. 07-12151. The Debtor filed a motion with the Bankruptcy Court requesting entry of an order authorizing the joint administration of its Chapter 11 Case with MBS Management for administrative purposes only [P-9]. The Bankruptcy Court subsequently granted the Debtor's motion to jointly administer [P-54].

### 3. Other First Day Pleadings

Following the filing of the petition, the Debtor filed, among other pleadings, the following

"first day pleadings" with the Bankruptcy Court:

(a)    Motion to Limit Notice [P-13] which motion was granted [P-52];

(b)    Application Pursuant to Fed.R.Bankr.P. 2014(a) for Order Authorizing the Employment of the Law Firm of Heller, Draper, Hayden, Patrick, & Horn, L.L.C. as Counsel Pursuant to Section 327(a) of the Bankruptcy Code and Amended Application Pursuant to Fed.R.Bankr.P. 2014(a) for Order Authorizing the Employment of the Law Firm of Heller, Draper, Hayden, Patrick, & Horn, L.L.C. as Counsel Pursuant to Section 327(a) of the Bankruptcy Code [P-279], which application was granted [P-310];

(c)    Motion for Authorization to Return Tenant Deposits [P-16], which motion was granted [P-183];

(d)    Motion Pursuant to Section 366 of the Bankruptcy Code for Order Establishing Adequate Assurance of Payment of Utilities [P-14], which motion was granted [P-183]; and

(e)    Motion of the Debtor Pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure for an Extension of Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs [P-17], which motion was granted [P-78].

### 4. Application to Employ Professionals

On January 4, 2008, the Bankruptcy Court entered an order approving the Debtor's amended

application to employ Heller, Draper, Hayden, Patrick & Horn, L.L.C. ("Heller Draper") [P-310].

On December 3, 2007, the Debtor filed its *Application by the Debtor for Entry of an Order*

*Authorizing the Employment and Retention of Dwyer & Cambre as Special Counsel* (the "Dwyer &

Cambre Application") [P-45]. After a hearing on December 11, 2007, the Bankruptcy Court granted

the Dwyer & Cambre Application.

On December 13, 2007, the Bankruptcy Court entered an order approving the employment of

FTI Consulting, Inc. (the "FTI Order") [P-184] to provide interim management to MBS Management

and thereby designate Robert Medlin as Chief Restructuring Officer. As the Debtor was not included

in the FTI Order, on January 9, 2008, the Debtor filed *Motion to Amend Application Pursuant to Fed.R.Bank.P. 2014(a) for Order under Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of FTI Consulting, Inc. to Provide Interim Management to the Debtor and Thereby Designate J. Robert Medlin as Chief Restructuring Officer and for Interim Relief Pending Final Hearing* ("Motion to Amend") [P-319]. In the Motion to Amend, the Debtor is seeking the Bankruptcy Court's entry of an Amended Final Order allowing the Debtor, along with MBS Management, to retain FTI Consulting, Inc.

### 5. Compliance with Bankruptcy Code, Bankruptcy Rules, Local Court Rules, and U.S. Trustee Deadlines.

On December 20, 2007, the Debtor filed its Statements of Financial Affairs, Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and List of holders of Partnership Interests ("Schedules").

Pursuant to section 341 of the Bankruptcy Code, a meeting of creditors for the Debtor was held on January 3, 2008.

### 6. Motion for Relief from Stay

On December 14, 2007, ING Clarion Partners, LLC ("ING") filed ING Clarion Partners, *LLC's Motion for Relief from the Automatic Stay as to Real Estate Debtor Fountains of Tomball, Ltd., MBS-Serrano, Ltd., MBS-The Windward, Ltd., MBS-The Leeward, Ltd., and Northcastle, Ltd.* [P-202] ("Motion for Relief") seeking the modification of the automatic stay so that ING could foreclose on certain properties, including the property owned by the Debtor. The hearing on the Motion for Relief was scheduled for January 9, 2008. On January 14, 2008, the Bankruptcy Court entered an Order Granting in Part the Motion for Relief (the "Lift Stay Order"). The automatic stay was lifted to permit ING to post for foreclosure the Property on or before January 15, 2008 and to allow the Secured Lender and ING to exercise their rights and remedies under the Secured Lender

Loan Documents. The Lift Stay Order also provides that the automatic stay shall be reimposed if the Debtor obtains a contract for the Sale of the Property prior to the date of the Foreclosure Sale on February 5, 2008, or file a Plan with an equity sponsor providing for the payment of the Secured Lender.

### 7. Cash Collateral Orders

Since the Petition Dates, the Bankruptcy Court has entered a number of orders with respect to the Debtor's Motion for (I) Interim and Final Orders (A) Authorizing Debtor' Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (B) Granting Adequate Protection to Prepetition Lenders Pursuant to 11 U.S.C. §§ 361 and 363, and (II) Scheduling Interim and Final Hearings on the Motion Pursuant to Bankruptcy Rule 4001(b)(2) [P-44, 163, 329]. Interim hearings have been held on these Cash Collateral Motions. As a result, the Debtor has been allowed to use cash collateral to maintain and operate its property on an interim basis until the final hearings on the cash collateral motions which are set for February 11, 2008.

### 8. Motion to Sell

On February 1, 2008, the Debtor filed its Motion for New Trial and Motion for Authority (i) to Sell Property Free and Clear of Interests, Liens, Mortgages, Privileges and Encumbrances Pursuant to Bankruptcy Code Section 363; (ii) to Establish Bidding Procedures; and (iii) to Assume Tenant Leases Pursuant to Bankruptcy Code Section 365 (the "Motion to Sell"). The Motion to Sell was heard by the Bankruptcy Court on January 25, 2008. The terms of the Motion to Sell are critical to the funding of the Debtor's Plan. The Debtor seeks Bankruptcy Court authority to sell its Property to Purchaser Steelwood Operating Company, L.L.C. or to such other Qualified Bidder for the amount of the Purchase Price. The terms of the sale are discussed in greater detail in the Plan.

# IV. THE PLAN

The Debtor has proposed the Plan and believes that the classification and treatment of Claims and Partnership Interests provided for in the Plan are consistent with the requirements of the Bankruptcy Code. Under the Bankruptcy Code, holders of Allowed Claims against and Partnership Interests in the Debtor that are Impaired and that receive distributions under the Plan are entitled to vote on the Plan. A copy of the Plan accompanies this Disclosure Statement as Exhibit D-1. A summary of the classification and treatment of Claims and Interests under the Plan is set forth above in this Disclosure Statement.

## A.    VALUATION OF THE DEBTOR

The following table is a summary of appraisals which were ordered by counsel for ING and conducted by CBRE CB Richard Ellis on the Debtor's Property.

| Date of Appraisal | Appraised Value of Property |
|---|---|
| October 19, 2007 | $7,200,000.00 |
| December 28, 2007 | $5,390,000.00 |

In addition, approximately seven months prior to the Debtor's bankruptcy filing, a developer was interested in purchasing the Property for a significant sum, contingent upon the developer's ability to have the Property re-zoned to allow the developer to tear down the existing units and re-build even more units on the site. A re-zoning of the Property was key to the developer's gaining the maximum value and usage of the Property, which sits on extremely valuable land considered to be prime real estate in Austin. The re-zoning change was never finalized and the proposed sale fell through. If the re-zoning of the real estate could be accomplished, the value of the Property would increase substantially.

The Debtor has entered into a Purchase and Sale Agreement to sell the Property for $9,600,000.00.

**B.    TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN**

**1.    Administrative Claims**

The Plan provides for the payment of Claims against and Interests in the Debtor, including

the treatment of unclassified Claims. The principal Administrative Claims known to the Debtor are

the fees and expenses of the Debtor's attorneys, Heller Draper and Dwyer & Cambre. As of January

31, 2008, those fees and expenses are estimated to be $300,000.00 for the Debtor. The fees and

expenses will continue to be incurred through the Effective Date of the Plan.

**a.    Generally.**  Subject to the bar date provisions herein, the Disbursing Agent

shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in

full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed

Administrative Claim, on the later of:  (a) the Effective Date, or (b) the date such Administrative

Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is

practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a

different treatment.

**b.    Payment of Statutory Fees.**  On or before the Effective Date, the Disbursing

Agent shall pay all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at

the Confirmation Hearing in Cash in full.

**c.    Bar Date for Administrative Claims.**

**i.    General Provisions.**

Except as provided below for professionals and non-tax liabilities incurred in

the ordinary course of business by the Debtor in Possession, requests for payment of Administrative

Claims must be Filed no later than thirty (30) days after the Effective Date.   Holders of

Administrative Claims (including, without limitation, any governmental units asserting claims for

federal, state, or local taxes) that are required to File a request for payment of such claims and that do

not File such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property. Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

### ii. Professionals.

All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.

### iii. Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims. Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

### 2. Priority Tax Claims

It is estimated that the Debtor owes approximately $41,468 in Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim shall receive one of the following three treatments, as determined by the Reorganized Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to

the amount of the Allowed Priority Tax Claim; (b) regular installment payments in Cash of a value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim, plus interest at such annual rate as is determined in accordance with section 511 of the Bankruptcy Code, over a period ending not later than five (5) years after the Petition Date; or (c) on such other terms and conditions as agreed to by the Reorganized Debtor and the holder of the Allowed Priority Tax Claim. Holders of Priority Tax Claims shall not be entitled to receive any payment on account of penalties with respect to or arising in connection with, such Priority Tax Claims. The Reorganized Debtor may prepay, without penalty, at anytime any Allowed Priority Tax Claim treated in accordance with option (b) above.

## C.  TREATMENT OF CLASSIFIED CLAIMS UNDER THE PLAN

The Plan has Six (6) Classes of Claims.

### 1.  Class 1 - Secured Lender Claims

Under the Plan, in the event of a transfer of the Sale Assets to the Purchaser for Cash and the holder of the Class 1 Claims and the Debtor agree on the amounts to pay the holder of the Class 1 Claims with respect to default interest, yield maintenance premiums and charges under section 506 of the Bankruptcy Code, the Class 1 Claims will be paid on the Effective Date or sooner pursuant to an order of the Bankruptcy Court.

In the event of a transfer of the Sale Assets to the Purchaser for Cash and the Debtor and the holder of the Class 1 Claims do not agree on the amount of the Allowed Secured Claims to be paid to the holder of the Class 1 Claims, the Class 1 Claims shall be referred exclusively to the Plan Funds and will be paid as provided in Article IV(A)(1) of the Plan.

In the event that the Purchaser assumes the Assumed Lender Amount, the Class 1 Claims of the Secured Lender will be paid by Purchaser as follows:

#### a.  Assumption of Assumed Lender Amount:

The Secured Lender's Allowed Class 1 Claims shall be satisfied in full by the Reinstatement of such Allowed Class 1 Claims on the following terms and in the following manner:

      **i.**     ***Term and Amortization:*** The Allowed Class 1 Claims will be deaccelerated and the maturity of such Class 1 Claims shall be Reinstated as such maturity existed under the terms of the Secured Lender Loan Documents prior to any default and all such defaults as of the Effective Date will be deemed satisfied or waived. The Allowed Class 1 Claims shall be paid in accordance with the terms of the Secured Lender Loan Documents after Reinstatement.

      **ii.**     ***Defaults:*** All defaults and/or events of default existing as of the Petition Date and as of the Effective Date, including without limitation, any default of a continuing nature, shall be deemed waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, shall also be deemed waived as of the Effective Date.

      **iii.**     ***Payments on the Effective Date:*** On the Effective Date, the Reorganized Debtor shall pay (the "Effective Date Payments") to the Secured Lender from the Purchase Price, after the utilization of any cash collateral held by the Secured Lender as provided for in (v) below out of Plan Funds: (A) all principal and interest payments due in accordance with the terms of the Secured Lender Loan Documents (at the non-default contract rate of interest and without acceleration of the debt) not made by the Debtor prior to the Petition Date; (B) all principal and interest payments due in accordance with the terms of the Secured Lender Loan Documents (at the non-default contract rate of interest and without acceleration of the debt) not made by the Debtor on or after the Petition Date through the Effective Date, (C) all reasonable fees and expenses, including legal fees and out of pocket expenses, provided for in the Secured Lender Loan

Documents, incurred by the Secured Lender as a result of any default under the Secured Lender Loan Documents prior to the Petition Date or in connection with the Reorganization Case subject to Bankruptcy Court approval of such fees and expenses over $25,000, (D) any assumption fee required to be paid under the Secured Lender Loan Documents, and (E) any other fees and costs agreed to by the Debtor and Secured Lender. Any dispute as to the amount of the Effective Date Payments, may be resolved by the Debtor (or if after the Effective Date, the Reorganized Debtor), and the Secured Lender without approval of the Bankruptcy Court; provided, however that any disputes that cannot be resolved between the parties shall be resolved by the Bankruptcy Court. Any amounts claimed by Secured Lender in good faith to be paid as part of the Effective Date Payments shall be held in escrow by the Reorganized Debtor subject to the liens of the Secured Lender until resolution of any such disputes and the payment of such disputed amounts by agreement of the parties or order of the Bankruptcy Court.

   **iv.**   ***Collateral:*** The Secured Lender shall retain all of its liens and security interests in the Sale Assets previously owned by the Debtor and transferred to the Purchaser pursuant to the Secured Lender Loan Documents, with the same attachment, priority and legal rights that existed on the Petition Date, subject to the limitations and modifications in treatment of the Allowed Secured Lender Claims and the Secured Lender Loan Documents as provided in the Plan.

**v.**      *Cash Collateral:* Any cash collateral that exists upon which the Secured Lender asserts a security interest on the Effective Date that accumulated during the pendency of the Reorganization Case through the Effective Date shall be paid to the Secured Lender and applied by the Secured Lender to the Effective Date Payments.

**vi.**      *Execution of Documentation:* The Debtor (and/or Reorganized Debtor or Purchaser as applicable) may execute any and all mutually agreeable documentation to effectuate the treatment described above in the Plan.

**b.**      If the Court allows the Secured lender to recover default interest, the Secured Lender's Class 1 Claims shall be satisfied in the following manner:

**i.**      *Capitalization:* On the Effective Date, all past due amounts owed to the Secured Lender on the Secured Lender Loan through the Effective Date, including any interest, legal fees and out-of-pocket expenses, shall be added to the principal amount of the Secured Lender's Class 1 Claims, and the Secured Lender shall be paid such amount after the utilization of any cash collateral held by the Secured Lender as provided in subsection (vii) below, as follows:

**ii.**      *Term and Amortization*: The Allowed Secured Lender Claims will bear interest at the rate of two (2) basis points over the ten (10) year Treasury Bill rate as such rate exists on the Effective Date, or at such other rate as determined by the Bankruptcy Court in order to comply with 11 U.S.C. §1129(b)(2)(A), and shall be paid by the Purchaser in equal monthly payments of interest only commencing thirty (30) days after the Effective Date, with a balloon payment of all unpaid principal and interest and other sums comprising the Allowed Secured Lender Claim due and payable in full on the original maturity date set forth in the Secured Lender Loan Documents in favor of the holder of the Class 1 Claims.

**iii.**      *Defaults:* All defaults and/or events of default existing as of the Petition Date and as of the Effective Date, including without limitation, default of

a continuing nature, shall be deemed waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, shall also be deemed waived as of the Effective Date.

**iv.**    ***Collateral:*** The Secured Lender shall possess a security interest on the Plan Funds in an amount equal to the Allowed Class 1 Claim that existed on the Effective Date, with the same attachment, priority and legal rights that existed on the Petition Date, subject to the limitations and modifications in treatment of the Allowed Secured Lender Claims and the Secured Lender Loan Documents as provided in the Plan.

**vii.**    ***Cash Collateral:*** Any cash collateral that exists upon which the Secured Lender asserts a security interest on the Effective Date that accumulated during the pendency of the Reorganization Case through the Effective Date shall be paid to the Secured Lender and applied by the Secured Lender to reduce the total aggregate amount of the Secured Lender's Claims to be paid hereunder.

**viii.**    ***Execution of Documentation***:  The Debtor (and/or Reorganized Debtor or Purchaser as applicable) may execute any and all mutually agreeable documentation to effectuate the treatment described above in the Plan.

**2.**    **Class 2 (Camp Roofing's Mechanic's Lien Claim).**

Class 2 is Impaired under the Plan, and the holder of the Class 2 Mechanic's Lien Claim is entitled to vote on the Plan. Any lien securing the Class 2 Claim against the Sale Assets will be canceled and erased and referred solely to the Plan Funds. To the extent the holder holds a valid, perfected and unavoidable mechanic's lien that is otherwise enforceable under applicable nonbankruptcy law against the Sale Assets, the holder will have an Allowed Class 2 Claim equal to the value of such perfected lien which shall constitute a lien upon the Plan Funds subordinate to the

lien of the holder of the Class 1 Claims. The holder of the Class 2 Claim will be paid based upon the following: interest monthly based upon an interest rate of two (2) basis points over the ten (10) year Treasury Bill Rate and a final payment when the holder of the Class 1 Claims is paid in full.

3. **Class 3 (Fun-n-Sun Pools of Austin, Inc.'s Mechanic's Lien Claim).**

Class 3 is Impaired under the Plan, and the holder of the Class 3 Mechanic's Lien Claim is entitled to vote on the Plan. Any lien securing the Class 3 Claim against the Sale Assets will be canceled and erased and referred solely to the Plan Funds. To the extent the holder holds a valid, perfected and unavoidable mechanic's lien that is otherwise enforceable under applicable nonbankruptcy law against the Sale Assets, the holder will have an Allowed Class 3 Claim equal to the value of such perfected lien which shall constitute a lien upon the Purchase Price subordinate to the lien of the holder of the Class 1 Claims. The holder of the Class 3 Claim will be paid based upon the following: interest monthly based upon an interest rate of two (2) basis points over the ten (10) year Treasury Bill Rate and a final payment when the holder of the Class 1 Claims is paid in full.

4. **Class 4 (Landscapes USA's Mechanic's Lien Claim).**

Class 4 is Impaired under the Plan, and the holder of the Class 4 Mechanic's Lien Claim is entitled to vote on the Plan. Any lien securing the Class 4 Claim against the Sale Assets will be canceled and erased and referred solely to the Plan Funds. To the extent the holder holds a valid, perfected and unavoidable mechanic's lien that is otherwise enforceable under applicable nonbankruptcy law against the Sale Assets, the holder will have an Allowed Class 4 Claim equal to the value of such perfected lien which shall constitute a lien upon the Purchase Price subordinate to the lien of the holder of the Class 1 Claims. The holder of the Class 4 Claim will be paid based upon the following: interest monthly based upon an interest rate of two (2) basis points over the ten (10) year Treasury Bill Rate and a final payment when the holder of the Class 1 Claims is paid in full.

5. **Class 5 (Other Secured Claims).**

Class 5 is Impaired under the Plan and the holders of Other Secured Claims in Class 5 are entitled to vote on the Plan. Any liens securing the Class 5 Claims against the Sale Assets will be cancelled and erased and referred solely to the Plan Funds. To the extent the holder of a Class 5 Claim holds a valid, perfected and unavoidable lien that is otherwise enforceable under applicable nonbankruptcy law against the Sale Assets, such holder will have an Allowed Class 5 Claim equal to the value of such perfected lien which shall constitute a lien upon the Purchase Price subordinate to the lien of the holder of the Class 1 Claims. Each holder of a Class 5 Claim will be paid based upon the following: interest monthly based upon an interest rate of two(2) basis points over the ten (10) year Treasury Bill Rate and a final payment when the holder of the Class 1 Claims is paid in full.

6.     **Class 6 (General Unsecured Claims).**

Class 6 is Impaired under the Plan, and the holders of Class 6 Claims are entitled to vote on the Plan. In the event the Debtor and the holder of the Class 1 Claims agree on a payment amount, the holders of Claims in Class 6 will be paid Pro Rata based upon the waterfall set forth in Article IV(A).

Holders of Allowed Class 6 Claims shall not be entitled to interest with respect to their Allowed Class 6 Claims for any period after the Petition Date.

In the event the Debtor does not pay the holder of the Class 1 claim in full on or before the Effective Date, the holders of the Class 6 Claims shall be paid the lesser of (1) the Allowed amount of such Class 6 Claim or (2) the balance remaining after payment in full of the Claims in Classes 1 through 5 pursuant to the Plan when the Class 1 creditors claim is paid in full pursuant to the Plan.

## D. TREATMENT OF INTERESTS UNDER THE PLAN

### 1. Class 7 (Partnership Interests).

Class 7 is unimpaired under the Plan and each holder of a Class 7 Interest is deemed to accept the Plan. The holders of Partnership Interests in the Debtor shall retain their Partnership Interests. To the extent any funds remain from the Plan Funds after payment (or reserve for payment) as provided in the Plan of all Allowed Claims and the Reorganized Debtor's post-Effective Date fees and expenses, including but not limited to wind-down costs and other expenses of the Reorganized Debtor, and the costs and expenses for the completion of all other actions of or by the Reorganized Debtor contemplated in the Plan or authorized by the Partnership Agreement, the Disbursing Agent shall distribute such remaining funds to the holders of Allowed Class 7 Interests in accordance with the terms of and any priorities set forth in the Partnership Agreement.

## E. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### 1. Vesting of Assets And Operations of Property.

(1) Except for the Sale Assets to be sold to the Purchaser in accordance with Article II of the Plan, or as otherwise set forth in the Plan or in the Confirmation Order, as of the Effective Date, all property of the Estate (including debtor in possession bank accounts, Cash held by any receiver, custodian or similar person or entity, and the Retained Causes of Action) shall revest in the Reorganized Debtor free and clear of all claims, liens, encumbrances and other interests of creditors and holders of interests. From and after the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

(2) On the Effective Date, pursuant to the Plan and the Confirmation Order, any receiver, custodian or similar person or entity appointed prior to the Effective Date for the Debtor or any of its property shall be terminated and discharged from its responsibilities and duties and all property, including Cash, of the Debtor held by such receiver, custodian or similar person or entity shall be immediately turned over to the Reorganized Debtor, without setoff or offset.

## 2.    Transfer of Sale Assets.

Generally, and as more specifically set forth in the Sale Order, the Purchase and Sale Agreement and the Plan: (a) Purchaser will purchase the Sale Assets from the Debtor (i) in Cash for the entirety of the Purchase Price, or (ii) by assumption of the Secured Lender Loan in accordance with the Plan, with the balance of the Purchase Price paid to the Debtor in Cash and (b) the Debtor will transfer the Sale Assets to Purchaser, free and clear of all liens, privileges, encumbrances and interests, except for liens securing the Secured Lender Loan if the Purchaser assumes the Secured Lender Loan; the Secured Lender will retain its liens against the Sale Assets to secure repayment of the Allowed Secured Lender Claims.

The Debtor filed the Motion to Sell with the Bankruptcy Court, seeking authority for the transfer of the Sale Assets to Purchaser and to establish Bid Procedures to maximize the value of the Sale Assets in order to benefit creditors of and holders of Partnership Interests against the Estate. Both the Debtor and Purchaser believe that the Purchase Price adequately reflects the fair market value of the Sale Assets. The offer of Purchaser, as represented by the Purchase and Sale Agreement, is the best and highest offer for the purchase of the Sale Assets that the Debtor has received.

The Bid Procedures allow for third parties to come into the sales process (the "Competing Bidders") and bid on the Sale Assets. The Bid Procedures as approved by the Bankruptcy Court in the Sale Order, are, as follows:

A.     Not later than twenty-seven (27) days after the entry of the Sale Order, or the next day thereafter on which the Bankruptcy Court is open for business if the last day shall fall on a date on which the Bankruptcy Court is closed, a Competing Bidder wishing to acquire the Sale Assets pursuant to these Bid Procedures shall deliver a written offer (the "Competing Offer") to: (1) Douglas S. Draper undersigned counsel for the Debtor, at 650 Poydras Street, Suite 2500, New Orleans, Louisiana 70130, facsimile number 504-299-3399; email address: ddraper@hellerdraper.com, (2) with a copy to Steelwood at 1016 Mopac Circle, Ste. 101, Austin, Texas 78746 Attn: Steve Oden, Jr., facsimile number 512-347-1764; email address: sodden@steelwoodllc.com, and c/o Christopher K. Bell, Esq., Smith, Robertson, Elliott, Glen, Klein & Bell, L.L.P., 221 West 6th Street, Suite 1100, Austin, Texas 78701; facsimile number 512-225-5825; email address: ebell@smith-robertson.com, and (3) with a copy to Monica S. Blacker, Esq., Andrews Kurth LLP, 1717 Main Street, Suite 3700, Dallas, Texas 75201, facsimile (214) 659-4401, email address monicablacker@andrewskurth.com.  The Competing Offer shall:

i.      include the name and address of the Competing Bidder;

ii.      provide that the Competing Offer is irrevocable through the conclusion of the Auction, and further provide that, in the event that the Competing Bidder is found to be the Winning Bidder at the Auction, then the Competing Offer will be irrevocable until the period set out in the Purchase and Sale Agreement, including, without limitation, the Closing Date;

iii.      provide that the Competing Bidder offers to purchase the Sale Assets on the same terms and conditions as set forth in the Purchase and Sale Agreement, as the same may be modified by order of the Court, and agrees to be bound by same, with the exception of the Purchase Price, which must be increased in the Competing

Offer to a price not less than $150,000.00 over and above the Net Sale Proceeds and subject to the other requirements set forth herein; and

     iv.     state and acknowledge that

     (a)     there are no conditions precedent to its performance under the Purchase and Sale Agreement, if and when this Court approves the sale of the Sale Assets, on the terms set forth in the Purchase and Sale Agreement;

     (b)     the Competing Bidder shall have no additional right of any due diligence other than what may be conducted during the Due Diligence Period and prior to the submission of the Competing Offer, and the Competing Offer shall not contain a termination right in favor of the Competing Bidder for any title or survey matter in existence as of the date of the Competing Offer or other due diligence;

     (c)     the Competing Offer is not subject to financing;

     (d)     the Competing Bidder will comply with the Bid Procedures at the Auction;

     (e)     the Competing Bidder either has no broker(s) or will be responsible for fees due to any such broker engaged by the Competing Bidder consistent with Section 12 of the Purchase and Sale Agreement; and

     (f)     the Competing Bidder agrees to the assumption of the leases as set forth in the Motion to Sell.

B.     state the manner in which the Competing Bidder will fund the Purchase Price, which must be one of the following: (a) cash already on hand for the Purchase Price at Closing; or (b) a binding, irrevocable commitment from a lender in an amount sufficient to fund the Purchase Price at Closing and containing no conditions

precedent other than the unsatisfied conditions in favor of Steelwood as set forth in the Purchase and Sale Agreement.

C.     The Competing Bidder must post with the Debtor contemporaneously with the submission of a Competing Offer a Deposit of Two Hundred Fifty Thousand and No/100 ($250,000.00) Dollars which shall be held by the Debtor subject to the treatment of a Deposit in the Bidding Procedures

D.     The Competing Bidder must deliver to the Debtor, with a copy to Steelwood, satisfactory evidence of the Competing Bidder's ability to close within the time frame contemplated by the Purchase and Sale Agreement, along with an authorization for the Debtor to verify the information contained therein. The Debtor shall be entitled to object to Competing Bidder status, subject to resolution by the Bankruptcy Court in the event of a dispute.

**2.     Funding of the Plan.**

In the event of a transfer of the Sale Assets to the Purchaser for Cash, the Class1 Claims of the Secured Lender shall either:

**(a)** be paid on the Effective Date or prior pursuant to Court Order if the Debtor and the holder of the Class 1 Claims reach an agreement on the payment of default interest, yield maintenance premiums and costs and charges under Section 506 of the Bankruptcy Code;  or

**(b)** have the loan de-accelerated pursuant to 11 U.S.C. §1123(d) and 1124(2) and then paid with monthly payments based upon the following:

**(i)**     an interest rate of two (2) basis points over the ten (10) year Treasury Rate as such rate existed on the Effective Date, or such other rate determined by the Bankruptcy Court as will satisfy the requirements of 11

U.S.C. §1129(b)(2)(A); **(ii)** a due date of all accrued, unpaid interest on the maturity date existing under the Secured Lender Loan Documents in favor of the holder of the Class 1 Claim and **(iii)** a lien on the Plan Funds equal to the Allowed Secured Claim of the holder of the Class 1 Claim as such Claim exists on the Effective Date. The Debtor shall possess the right to prepay the Class 1 Claim at anytime as provided in the Secured Lender Loan Documents.

In the event that the Purchaser assumes the Secured Lender Loan and the Secured Lender Loan Documents, the Purchaser shall pay the Assumed Lender Amount pursuant to the terms and conditions set forth in the Secured Lender Loan Documents as if no default had occurred, and the Debtor shall pay, out of the Plan Funds, an amount sufficient to de-accelerate the Secured Lender Loan pursuant to 11 U.S.C. §§ 1123(d) and 1124(2).

All creditors, holders of Allowed Claims, holders of Allowed Partnership Interests in the Debtor and all holders of any and all liens, privileges and interests or encumbrances shall be referred exclusively to the Plan Funds.

3.      **Dissolution of Debtor.**

Upon the liquidation of all of the assets of the Debtor or the Estate which are vested in the Reorganized Debtor pursuant to the Plan, payment of all Claims and Partnership Interests in accordance with the Plan, payment of the Reorganized Debtor's post-Effective Date fees and expenses, including but not limited to wind down costs and other expenses, and the completion of all other actions of or by the Reorganized Debtor contemplated in the Plan, the Reorganized Debtor shall be deemed to be dissolved under applicable state law without the necessity of any further action or approval by the holders of Claims or Interests in the Debtor or the Reorganized Debtor, all of which shall be deemed to have been given or occurred. The General Partner of the Reorganized

Debtor is authorized to execute any notices, instruments, pleadings or other documents, or make any filing, deemed necessary or useful in his discretion to reflect or document the dissolution of the Reorganized Debtor.

### 4. Discharge of Debtor and Injunction

Except as otherwise specifically provided in the Plan, the rights afforded in the Plan and the treatment of all Claims and Partnership Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Partnership Interests of any nature, whatsoever, including, any interest accrued on such claims from and after the Petition Date against the Debtor, the Debtor in Possession, or any of their assets or properties. Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date: (i) the Debtor shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all claims and interests, including claims and interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code whether or not: (a) a proof of claim or proof of interest based on such debt or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a claim or interest based on such debt or interest is allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of a claim or interest based on such debt or interest has accepted the Plan; and (ii) all persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, Purchaser, their successors, or their respective assets or properties any other or future claims or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all persons who have held, currently hold or may hold a debt, claim, or interest discharged under the Plan are permanently enjoined from taking any of the following actions on

account of any such discharge, debt, claim, or interest: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, Purchaser, their successors, or their respective properties; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, Reorganized Debtor, Purchaser, their successors, or their respective properties; (3) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, Reorganized Debtor, Purchaser, their successors, or their respective properties; (4) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, Reorganized Debtor, Purchaser, their successors, or their respective properties; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

5.     **Exculpation and Limitation of Liability**

On or after the Effective Date, neither the Debtor, the Debtor in Possession, the Reorganized Debtor, Purchaser, nor any of their respective employees, officers, directors, partners, members, managers, agents, or representatives, or any professional persons employed by them shall have or incur any liability to any person or entity, and are hereby released from any such liability or any claims or causes of action related thereto, for any act taken or omission made in connection with, relating to, or arising out of (i) the Reorganization Case, (ii) the negotiation, formulation and filing of the Plan, and any contract, instrument, release, or other agreement or document created in connection with the Plan, including the Purchase and Sale Agreement, (iii) the negotiation, preparing, filing and dissemination of the Disclosure Statement and the solicitation of votes on, or funds for, the Plan, and

(iv) confirmation of the Plan and the consummation and administration of the Plan and any property to be distributed pursuant to the Plan.

## V. EXECUTORY CONTRACTS

### A. REJECTION

Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Closing Date or that has not previously been rejected by the Debtor in Possession pursuant to an order of the Bankruptcy Court, shall be rejected by the Debtor as of the Closing Date pursuant to sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on the "Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser" (to be Filed on or before the day that is ten (10) days prior to the Confirmation Hearing), (ii) that has been previously assumed by the Debtor in Possession pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for assumption of such executory contract or unexpired lease has been filed prior to the Effective Date or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser" as provided in Article V.B below. Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtor, the Reorganized Debtor, the Purchaser, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as otherwise provided in the Plan.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving all such rejections as of the Closing Date. Any claims for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed within thirty (30) days after the Effective Date or be forever barred and unenforceable against the Debtor, Reorganized Debtor, and their properties and barred from receiving any distribution under the Plan.

### B. ASSUMPTION

Each executory contract or unexpired lease of the Debtor (i) that is listed on the Schedule of

Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser" (to be Filed on or before the day that is ten (10) days prior to the Confirmation Hearing), (ii) that has been previously assumed by the Debtor in Possession pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for assumption and assignment to Purchaser of such executory contract or unexpired lease has been filed prior to the Closing Date or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser" is assumed in accordance with sections 365 and 1123 of the Bankruptcy Code as of the Closing Date and assigned pursuant to Section 365(f) to Purchaser. Entry of the Confirmation Order shall constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed and assigned pursuant to the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan and assigned to Purchaser shall be and hereby is assumed by the Debtor and assigned by the Debtor to the Purchaser as of the Closing Date and shall be fully enforceable by the Purchaser in accordance with its terms thereof, and shall include all modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises. Listing a contract or lease on the Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser is not deemed an admission by the Debtor or Reorganized Debtor that such contract is an executory contract or unexpired lease or that the Debtor or Reorganized Debtor has any liability thereunder.

The Debtor reserves the right at any time before the Closing Date to amend the Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser to: (a) delete any executory contract or unexpired lease listed on the Schedule, thus providing for its rejection or (b) add any executory contract or unexpired lease to the Schedule, thus providing for its assumption

and assignment to Purchaser under the Plan. The Debtor shall provide notice of any amendment of the Exhibit to the party to the affected executory contract and unexpired lease and the Office of the U.S. Trustee.

### C. CURE PAYMENTS, COMPENSATION FOR PECUNIARY LOSS AND ADEQUATE PROTECTION

All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by Section 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively, all cure payments, and any and all provisions for adequate assurance or and/or compensation for actual pecuniary loss due or required to be paid under Section 365(b)(1)(A)-(C) of the Bankruptcy Code, the "Cure Payments") for any executory contract or unexpired lease that is being assumed and assigned to Purchaser under the Plan, unless disputed by the Debtor, shall be made by the Reorganized Debtor on the Effective Date.

The Purchaser shall have no responsibility to make any Cure Payments on executory contracts and unexpired leases assumed by the Debtor and assigned to the Purchaser.

Any non-Debtor party to any executory contract or unexpired lease to be assumed and assigned to Purchaser under the Plan that believes that the Cure Payment it is due in connection with such assumption and assignment is different from the amount set forth on the "Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser" for the applicable contract or lease must File a written objection to the assumption and assignment of such executory contract or unexpired lease and state in the written objection a request for such different Cure Payment at least ten (10) days before the commencement of the Confirmation Hearing, unless the amount of such Cure Payment has been previously agreed to in writing by the Debtor. Any claims for Cure Payments different than as are set forth in the Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser not Filed as part of a written objection within such time period will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor, its property and the Purchaser. Unless the non-debtor party to any executory contract or unexpired lease to be assumed and assigned Files and serves on the Debtor and its

respective counsel an objection to assumption and assignment of such executory contract or unexpired lease to the Purchaser for any reason, including objecting to the proposed Cure Payment, or asserting that any other Cure Payment is required or owed in connection with such assumption and assignment to Purchaser, on or before the last date established by the Bankruptcy Court to File and serve objections to Confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed and assigned to the Purchaser, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured upon the making of any Cure Payment set forth in the Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser, if any, as of the Closing Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone in connection with such assumption and assignment of the executory contract or unexpired lease to Purchaser.

In the event of an objection to the assumption and assignment of executory contracts or unexpired leases regarding the amount of any Cure Payment, including the ability of the Reorganized Debtor or Purchaser to provide adequate assurance of future performance or any other matter pertaining to assumption and assignment, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and, in the discretion of the Debtor, (b) the Debtor (i) may assume and assign to Purchaser such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject the contract or lease as of the Closing Date.

The Reorganized Debtor shall make any disputed Cure Payment on the later of the Effective Date and the date such Cure Payment is due pursuant to a Final Order, provided however that the Reorganized Debtor shall have five (5) days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to reject such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Closing Date.

**D. EFFECT OF CONFIRMATION ORDER ON EXECUTORY CONRACTS AND UNEXPIRED LEASES**

(1) Subject to the occurrence of the Closing Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) and of the assignment to Purchaser under Section 365(f) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption and assignment is in the best interests of the Debtor, its Estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor, no Cure Payments owing ( including that there is no compensation due for any actual pecuniary loss) other than as set out on the Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser, (ii) there is adequate assurance of future performance with respect to each such assumed and assigned executory contract or unexpired lease, and (iii) such assumption and assignment is in the best interest of the Debtor and its Estate, (iv) upon the Closing Date, the assumed and assigned executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Reorganization Case and assigned to the Purchaser constitute valid contracts and leases, as applicable, enforceable by the Purchaser against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Reorganization Case.

(2) The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections of all executory contracts and unexpired leases which are not assumed and assigned under the Plan as of the Closing Date, with the rejection effective as of the day before the Petition Date, as

being burdensome and not in the best interest of the Estate. Any claims for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed within thirty (30) days after the Effective Date or be forever barred and unenforceable against the Debtor, Reorganized Debtor, and its properties and barred from receiving any distribution under the Plan.

## VI. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and certain U.S. holders of Claims and Interests.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section. Certain tax aspects of the Plan are uncertain due to the lack of applicable regulations and other tax precedent. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt.

TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND ANY INTERESTS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING

PENALTIES THAT MAY BE IMPOSED UNDER THE TAX CODE, AND (b) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE PROMOTION OF THE PLAN.

HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT THEIR TAX ADVISOR TO DETERMINE THE AMOUNT AND TIMING OF ANY INCOME OR LOSS SUFFERED AS A RESULT OF THE CANCELLATION OF THE CLAIMS OR STOCK OPTIONS HELD BY SUCH PERSON, WHETHER SUCH INCOME OR LOSS IS ORDINARY OR CAPITAL AND THE TAX EFFECT OF ANY RIGHT TO, AND RECEIPT OF DEFERRED PAYMENT.

THE ABOVE DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, ALL HOLDERS SHOULD CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## VII. LIQUIDATION ANALYSIS UNDER CHAPTER 7

Under the Bankruptcy Code, in order for a plan to be confirmed, each creditor must receive or retain under the Plan a recovery that has a value at least equal to the value of the distribution that such creditor would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Pursuant to the Debtor's Liquidation Analysis, attached to this Disclosure Statement as Exhibit D-2, the Debtor believes that recoveries under a Chapter 7 liquidation scenario would be significantly lower than that proposed by the Plan for a variety of reasons. First, the sale of the Debtor's primary assets under a compressed timeframe and the distressed nature of a Chapter 7 liquidation will most likely result in a lower sale value than the Debtor will receive under the terms of the Plan. The Property has been extensively marketed by management of the Debtor and the resulting reorganization Plan provides the best value to the Estate. Second, the conversion of the

case to a Chapter 7 liquidation would necessitate the payment of fees to the Chapter 7 Trustee, and attorneys, accountants and other professionals retained by the Chapter 7 Trustee, for disposition of the assets. These fees directly reduce any recovery otherwise available to creditors and/or the holders of Partnership Interests. Third, the Chapter 7 Trustee would require the services of a real estate broker; thereby incurring additional fees that reduce available recoveries. Under the terms of the Plan, a sale transaction does not take place in the near term, postponing or avoiding the impact of broker fees. Finally, liquidation under Chapter 7 may create immediate negative tax consequences for the holders of Partnership Interests.

Accordingly, each holder of an Allowed Claim or an Allowed Interest will receive or retain under the Plan a recovery that has a value at least equal to the value of the distribution that such creditor would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

## VIII. CONFIRMATION PROCEDURE

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

## A. VOTING AND OTHER PROCEDURES

A Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of Claims that are entitled to vote to accept or reject the Plan. Each holder of a Claim in Classes 1-6 shall be entitled to vote to accept or reject the Plan and each holder of a Partnership Interest in Class 7 shall be entitled to vote to accept or reject the Plan.

Pursuant to the provisions of the Bankruptcy Code, only holders of claims in classes of claims that are impaired under the terms and provisions of a chapter 11 plan and are to receive distributions thereunder are entitled to vote to accept or reject the plan. Classes of claims in which the holders of claims and interests will not receive or retain any property under a chapter 11 plan are deemed to have rejected the plan and are not entitled to vote to accept or reject the plan. Classes of

claims in which the holders of claims or interests are Unimpaired under a Chapter 11 plan are deemed to have accepted the plan and also are not entitled to vote to accept or reject the plan.

In the event that the Debtor or the Reorganized Debtor transfers the Sale Assets to Purchaser for Cash, and the Debtor or the Reorganized Debtor pays the Class 1 Claims in full, the Secured Lender will be unimpaired, and thus, deemed to accept the Plan.

Although the Debtor believes that the Class of Partnership Interests is not Impaired under Section 1124 of the Bankruptcy Code by the Plan, and therefore the Class of Partnership Interests is deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code, the Debtor will nonetheless solicit acceptances of the Class 7 Partnership Interests in order to avoid any potential delay for re-solicitation of that Class in the event that it is determined that the Partnership Interests are Impaired under and therefore the holders are entitled to vote on the Plan. The votes of the holders of Partnership Interests will be used at the confirmation hearing for purposes of determining if the Class of Partnership Interests has accepted the Plan in the event that it is determined that the Partnership Interests are Impaired and therefore the holders are entitled to vote on the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims, as acceptance by creditors actually voting in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims; and (ii) interests, as acceptance by interest holders in that class actually voting that hold at least two-thirds in number of the shares of the common stock of a debtor.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or otherwise in accordance with the provisions of the Bankruptcy Code.

With respect to the Plan, any holder of a Claim or Partnership Interest in an Impaired Class (i) whose Claim or Partnership Interest has been listed by the Debtor in the Schedules filed with the Bankruptcy Court (provided that such Claim or Partnership Interest has not been scheduled as

disputed, contingent or unliquidated), or (ii) who filed a proof of claim or interest on or before the bar date (or, if not filed by such date, any proof of claim or interest filed within any other period of limitations or with leave of the Bankruptcy Court), which Claim or Partnership Interest has not been disallowed and is not the subject of an objection, is entitled to vote. Holders of Claims or Partnership Interests that are disputed, contingent and/or unliquidated are entitled to vote their Claims or Partnership Interests only to the extent that such Claims or Partnership Interests are Allowed for the purpose of voting pursuant to an order of the Bankruptcy Court. The Debtor may seek a determination that any Class of Claims or Partnership Interests that is entitled to vote to accept or reject the Debtor's Plan that does not vote to accept or reject the Debtor's Plan be deemed to accept the Plan, as applicable.

After carefully reviewing the Disclosure Statement, including any exhibits, each holder of an Allowed Claim or Partnership Interest entitled to vote may vote whether to accept or reject the Debtor's Plan. A Ballot for voting on the Plan accompanies this Disclosure Statement. If you hold a Claim or Partnership Interest in more than one Class and you are entitled to vote Claims or Partnership Interests in more than one Class, you may receive a Ballot or Ballots, which will permit you to vote in all appropriate Classes of Claims or Partnership Interests. Please vote and return your Ballot to Heller, Draper, Hayden, Patrick & Horn, LLC as follows, whether by U.S. mail, or by hand delivery or courier service:

> **Heller, Draper, Hayden, Patrick & Horn, LLC**
> **Attention: Douglas S. Draper**
> **650 Poydras Street, Suite 2500**
> **New Orleans, LA 70130**

ANY EXECUTED BALLOT THAT FAILS TO INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED. BALLOTS RETURNED TO THE HELLER,

DRAPER, HAYDEN, PATRICK, & HORN, LLC BY FACSIMILE TRANSMISSION OR ANY OTHER ELECTRONIC MEANS WILL NOT BE COUNTED.

> **THE VOTING DEADLINE IS 5:00 P.M., CENTRAL TIME ZONE, ON _____ __, 2008.**

APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. ALL CREDITORS THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

**Ballots must be *received* by Heller, Draper, Hayden, Patrick, & Horn, LLC by the Voting Deadline.** If a Ballot is received after the Voting Deadline, it will not be counted. Complete the Ballot by providing all the information requested, and sign, date and return the Ballot by mail, overnight courier or personal delivery to Heller, Draper, Hayden, Patrick, & Horn, LLC at the address set forth above.

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.

ANY OBJECTIONS TO THE CONFIRMATION OF THE PLAN MUST BE FILED IN ACCORDANCE WITH AND NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.

If you are entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan, please telephone the Voting Agent at the following telephone number: **1-504-299-3300**.

## B. DISCLAIMERS AND ENDORSEMENTS

This Disclosure Statement contains information about the Plan. Holders of Claims and Partnership Interests are urged to study the text of the Plan carefully to determine the impact of the Plan on their Claims or Partnership Interests and to consult with their financial, tax and legal advisors.

Nothing contained in this Disclosure Statement or the Plan will be deemed an admission or statement against interest that can be used against the Debtor in any pending or future litigation. Any reference to creditors or Claims or Partnership Interests in this Disclosure Statement is not an admission with respect to the existence, ownership, validity, priority, or extent of any alleged Lien, Claim, Partnership Interest or encumbrance.

Certain statements and assertions in this Disclosure Statement may be subject to dispute by parties in interest.

## C. THE CONFIRMATION HEARING

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing with respect to the Plan. The Confirmation Hearing in respect of the Plan has been scheduled for the date and time set forth in the accompanying notice before the Honorable Elizabeth Magner, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of Louisiana, **[insert date]**. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice other than an announcement of the adjourned date made at the Confirmation Hearing or posted at the courthouse at the Confirmation Hearing or at an adjournment thereof. Any objection to confirmation (i) must be made in writing, (ii) must specify in

detail the name and address of the objector, all grounds for the objection and the amount of the Claim or a description of the interest in the Debtor held by the objector, and (iii) must be timely made. Any such objections must be filed with the Bankruptcy Court and served so that they are received by the Bankruptcy Court, and the following counsel, on or before the date and time set forth in the accompanying notice:

**Counsel to the Debtor**:

Heller, Draper, Hayden, Patrick, & Horn, LLC
Douglas S. Draper, La. Bar Roll No 5073
William H. Patrick, III, La. Bar Roll No. 10359
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Telephone: (504) 299-3300
Fax: (504) 299-3399

**Counsel to Secured Lender:**
Andrews Kurth L.L.P.
Monica S. Blacker
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Fax: (214) 659-4401

## D.    CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan is (i) accepted by all impaired classes of claims or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) feasible, and (iii) in the "best interests" of creditors that are impaired under the plan.

## E.    UNFAIR DISCRIMINATION AND FAIR AND EQUITABLE TESTS

Under the Bankruptcy Code, a plan does not have to be accepted by every class of creditors or interest holders to be confirmed. If a class of claims rejects a plan or is deemed to reject a plan, the plan proponent has the right to request confirmation of the plan pursuant to Section 1129(b) of

the Bankruptcy Code -- the so-called "cramdown" provision of the Bankruptcy Code. Section 1129(b) permits the confirmation of a plan notwithstanding the non-acceptance of such plan by one or more impaired classes of claims and interests. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class, and meets the other legal criteria for confirmation.

In the event that any Class of Claims or Partnership Interests fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and/or (b) modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

Accordingly, to obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Impaired, non-accepting Class. The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable." The Bankruptcy Code establishes "cram down" tests for classes of secured claims, unsecured claims and interests that do not accept the plan, as follows:

1.      **Secured Creditors**

Either (a) each impaired secured creditor retains the liens securing its secured claim and receives on account of its secured claim deferred cash payments (x) totaling at least the allowed amount of the secured claim and (y) having a present value at least equal to the value of the secured creditor's collateral, (b) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (c) the property securing the claim is sold free and clear of liens with the secured creditor's lien to attach to the proceeds of the sale and such lien on proceeds is treated in accordance with clause (a) or (b) of this subparagraph.

### 2. Unsecured Creditors

Either (a) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim, or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan, and the "best interest" test is met so that each impaired unsecured creditor recovers at least what that creditor would receive if the case was converted to a chapter 7 case.

### 3. Holders of Interests

Either (a) each holder of impaired interests receives or retains under the plan property of a value equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) no holder of junior interests receives or retains any property, and the "best interest" test is met, so that each impaired interest holder recovers at least what that interest holder would receive if the case was converted to a chapter 7 case.

### 4. No Unfair Discrimination

In addition, the "cram down" standards of the Bankruptcy Code prohibit "unfair discrimination" with respect to the claims of any impaired, non-accepting class. While the "unfair discrimination" determination depends upon the particular facts of a case and the nature of the claims at issue, in general, courts have interpreted the standard to mean that the impaired, non-accepting class must receive treatment under a plan of reorganization which allocates value to such class in a manner that is consistent with the treatment given to other classes with claims against the debtor of equal or junior status.

All Classes will receive distributions under the Plan; thus, no Classes are conclusively presumed to have rejected the Plan. The Debtor believes that the treatment of all Classes of Claims and Partnership Interests under the Plan satisfies the "no unfair discrimination" requirement for

nonconsensual confirmation of the Plan under section 1129(b) of the Bankruptcy Code. With respect to each such Impaired, non-accepting Class, there is no Class of equal priority receiving more favorable treatment under the Plan, and no Class that is junior to such Impaired, non-accepting Class will receive or retain any property under the Plan on account of the Claims or Interests in such Class.

## F.    FEASIBILITY

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless the liquidation of the debtor is provided for in the plan. Here, the liquidation of substantially all of the Debtor's assets is provided for in the Plan. Financial projections demonstrating the pro forma financial results of the Reorganized Debtor are attached as Exhibit D-4.

## G.    BEST INTEREST TEST

In order to confirm a plan of reorganization, the Bankruptcy Court must determine that the plan is in the best interests of all classes of creditors and interest holders impaired under that plan. The "best interest" test requires that the Bankruptcy Court find that the plan provides to each member of each impaired class of claims and interests (unless each such member has accepted the plan) a recovery which has a value at least equal to the value of the distribution that each creditor or interest holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

All Classes will receive distributions under the Plan; thus, no Classes are conclusively presumed to have rejected the Plan. The Debtor requests confirmation of the Plan over the rejection of any Classes. In so doing, the Debtor seeks to establish that the Plan complies with the best interest of creditors test with respect to any such Class or Classes, and satisfy all other legal criteria for confirmation.

As reflected in the discussion above, and as demonstrated in the Liquidation Analysis attached to this Disclosure Statement as Exhibit D-3, the Debtor believe that the Plan provides to

each holder of a Claim and Partnership Interest holder a value at least equal to the value of the distribution that each holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

## H. CERTAIN RISK FACTORS TO BE CONSIDERED

HOLDERS OF CLAIMS AGAINST AND PARTNERSHIP INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN (AND ANY DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE), BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND THE IMPLEMENTATION OF THE PLAN.

## I. CERTAIN BANKRUPTCY CONSIDERATIONS

### 1. Risk of Liquidation of the Debtor's Estate

If the Plan is not confirmed and consummated, there can be no assurance that the Debtor's Chapter 11 Case will continue as a chapter 11 reorganization case rather than be converted to a chapter 7 liquidation case, or that any alternative plan of reorganization would be on terms as favorable or more favorable to holders of Claims and Partnership Interests as the terms of the Plan. If a liquidation under chapter 7 of the Bankruptcy Code or different reorganization were to occur, the distributions to certain holders of Allowed Claims or Allowed or Partnership Interests may be reduced, or possibly completely eliminated. As previously noted, the Debtor believes that in a liquidation under chapter 7, additional administrative expenses of a chapter 7 trustee and such trustee's attorneys, accountants, and other professionals, would cause a diminution in the value of the Debtor's Estate. In addition, certain additional Claims may arise in a chapter 7 liquidation and from the rejection of unexpired leases and other executory contracts in connection with any cessation of

the Debtor's operations. As described above, this might negatively impact the amount of distributions under the Plan, if any, to holders of Allowed Claims or Allowed Interests. As a result of these circumstances, the Debtor believes that the Plan provides a significantly higher return to holders of Claims against and Partnership Interests in the Debtor, as compared to liquidation.

### 2. Risk of Non-Occurrence of the Effective Date

The occurrence of the Effective Date in each of the Plan is conditioned upon the happening of certain events. There can be no assurance that all of these events will occur or that those that do not occur will be waived. Accordingly, even if the Plan is confirmed, there can be no assurance that the Effective Date will occur.

### 3. Uncertainty Regarding Objections to Claims

The Plan provides that certain objections to Claims can be filed with the Bankruptcy Court after the Effective Date. A creditor may not know that its Claim will be objected to until after the Effective Date.

### 4. Performance of Obligations by the Reorganized Debtor under the Plan

Although the Debtor and the Reorganized Debtor believe that the Reorganized Debtor can successfully perform all of its obligations under its Plan, there can be no assurance that the Reorganized Debtor will do so.

## IX. CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any alternative. In addition, any other alternative would involve significant delay, litigation, uncertainty, substantial additional administrative costs. The Debtor urges holders of Impaired Claims and Impaired Partnership Interests against the Debtor to vote in favor of the Plan.

Dated: February 1, 2008

DISCLOSURE STATEMENT FILED BY:

_____

Douglas S. Draper, La. Bar Roll No. 5073
William H. Patrick, III, La. Bar Roll No. 10359
**Heller, Draper, Hayden, Patrick, & Horn, LLC**
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: (504) 299-3300
Fax: (504) 299-3399
Email: wpatrick@hellerdraper.com
   ddraper@hellerdraper.com

As counsel to
Northcastle, Ltd.
as the Debtor and the Debtor in Possession