# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:** | **CASE NO. 07-12152** |
| **NORTHCASTLE, LTD.**<br>**Tax Id. No. xx-xxx1928** | **CHAPTER 11** |
| **DEBTOR** | |

*Jointly Administered with*                 **CASE NO. 07-12151**

**M.B.S. MANAGEMENT SERVICES, INC.**[1]     **CHAPTER 11**
**Tax Id. No. xx-xxx7655**

      **DEBTOR**

---

## AMENDED DISCLOSURE STATEMENT
### DATED AS OF OCTOBER 30, 2009

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE CHAPTER 11 PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THERE WILL BE A HEARING ON THIS DISCLOSURE STATEMENT TO DETERMINE IF IT PROVIDES ADEQUATE INFORMATION. IF THE DISCLOSURE STATEMENT IS APPROVED BY THE BANKRUPTCY COURT, THERE WILL BE A SUBSEQUENT HEARING TO CONSIDER CONFIRMATION OF THE PLAN. ALL CREDITORS AND EQUITY INTEREST HOLDERS WILL BE NOTIFIED OF THE DATE OF SUCH CONFIRMATION HEARING.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

---

[1] Northcastle, Ltd. (07-12152), MBS-Woodland Hills, Ltd. (07-12153), MBS-Country Village, Ltd. (07-12154), MBS-The Windward, Ltd. (07-12155), MBS-The Leeward, Ltd. (07-12156), MBS-Serrano, Ltd. (07-12157), MBS-Fountains of Tomball, Ltd. (07-12158), MBS - South Point Apartments (07-12283), MBS - Lodge at Stone Oak, Ltd. (07-12292), MBS-Claremore, Ltd. (07-12397), MBS-Colonnade, Ltd. (07-12398), MBS-Equinox on the Park, Ltd. (07-12319), MBS-Forest Cove, Ltd. (07-12363), MBS-Indian Hollow, Ltd. (07-12400), MBS-Las Ventanas, Ltd. (07-12399), MBS-Mirada, Ltd. (07-12401), MBS-Sage Creek, Ltd. (07-12402), MBS-Walnut Creek, Ltd. (07-12403), MBS-Bristol Heights, Ltd (08-10160), MBS-Steeplecrest, Ltd. (08-10162) and MBS-The Heritage, Ltd. (08-10163) all of whom, together with M.B.S. Management Services, Inc. are collectively referred to as the "Jointly Administered Debtors," and are being jointly administered under case no. 07-12151 pursuant to court orders [P-54, P-116 and P-273], with the exception of MBS-Bristol Heights, Ltd (08-10160), MBS-Steeplecrest, Ltd. (08-10162) and MBS-The Heritage, Ltd. (08-10163), with respect to which cases motions for joint administration are pending but have not been acted upon.
3179.18512.158642.7

## EXHIBITS TO DISCLOSURE STATEMENT

EXHIBIT D-1        Chapter 11 Amended Plan of Reorganization for Northcastle, Ltd. as Modified through July 17, 2009

EXHIBIT D-2        Liquidation Analysis

# TABLE OF CONTENTS

**Page**

Exhibits to Disclosure Statement ......................................................................................... ii

Introduction ............................................................................................................................. 1

Definitions and Rules of Construction ................................................................................ 1

I.  Purpose and Summary of the Plan ............................................................................ 12

II.  Summary of Classification and Treatment of Claims and Interests
      Under the Plan ........................................................................................................... 13
      A.  Treatment of Claims and Interests .................................................................. 13
      B.  Interests Under the Plan ................................................................................... 16

III.  General Overview and Background Information ....................................................... 17
      A.  Background and General Information ............................................................. 17
           1.  Overview ..................................................................................................... 17
           2.  Debtor's Corporate Structure .................................................................. 18
           3.  Operating History ...................................................................................... 18
           4.  The Property ............................................................................................... 19
      B.  The Debtor's Managing Member ..................................................................... 19
      C.  The Debtor's Debt Structure ........................................................................... 19
      D.  Events Leading To The Chapter 11 Case ....................................................... 20
      E.  Significant Post-Petition Events ...................................................................... 21
           1.  Petition for Relief ...................................................................................... 21
           2.  Other First Day Pleadings ........................................................................ 21
           3.  Application to Employ Professionals ...................................................... 22
           4.  Compliance with Bankruptcy Code, Bankruptcy Rules,
                Local Rules, and U.S. Trustee Deadlines ................................................ 23
           5.  Motion for Relief from Stay .................................................................... 23
           6.  Motion to Sell ............................................................................................ 24
           7.  Complaint for Interpleader ...................................................................... 24

IV.  The Plan ........................................................................................................................ 24
      A.  Valuation of the Debtor .................................................................................... 25
      B.  Objections to Confirmation ............................................................................. 25
      C.  Means for Execution and Implementation of the Plan ................................. 26
           1.  Vesting of Assets and Operations of Property ....................................... 26
           2.  Funding of the Plan ................................................................................... 26
           3.  Dissolution of Debtor ................................................................................ 26
           4.  Discharge of Debtor and Injunction ....................................................... 27
           5.  Causes of Action ........................................................................................ 28

V. Executory Contracts ........................................................................................28
  A. Rejection ........................................................................................28
  B. Management Agreements ................................................................29

VI. Certain U.S. Federal Income Tax Consequences.......................................29

VII. Liquidation Analysis Under Chapter 7 ...................................................30

VIII. Confirmation Procedure ..........................................................................31
  A. Voting and Other Procedures ........................................................31
  B. Disclaimers and Endorsements .....................................................34
  C. The Confirmation Hearing ............................................................34
  D. Confirmation ..................................................................................35
  E. Unfair Discrimination and Fair and Equitable Tests ....................36
   1. Secured Creditors.................................................................36
   2. Unsecured Creditors.............................................................37
   3. Holders of Interests..............................................................37
   4. No Unfair Discrimination .....................................................37
  F. Feasibility.......................................................................................38
  G. Best Interest Test............................................................................38
  H. Certain Risk Factors to be Considered...........................................39
  I. Certain Bankruptcy Considerations ...............................................39
   1. Risk of Liquidation of the Debtors' Estate ..........................39
   2. Uncertainty Regarding Objections to Claims ......................40
   3. Performance of Obligations by the Reorganized Debtor under the Plan ....40

IX. Conclusion and Recommendation ............................................................40

# INTRODUCTION

Northcastle, Ltd. ("Northcastle" or "Debtor"), or on and after the Effective Date of the Plan, the "Reorganized Debtor", has filed a Chapter 11 Amended Plan of Reorganization for Northcastle, Ltd. as modified through July 17, 2009 (the "Plan") [P-2434]. The Plan is attached to this Disclosure Statement as Exhibit D-1. The Debtor submits this Amended Disclosure Statement Dated as of October 30, 2009 (this "Disclosure Statement"), pursuant to Section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), to holders of Claims against and Partnership Interests in the Debtor, in connection with (i) the solicitation of acceptances or rejections of the Plan (together with any modification, amendment or supplement, of the Plan), and (ii) the hearings to consider approval of the Plan to be scheduled before the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court") on the date(s) set forth in the accompanying notice.

In the event of a conflict or difference between the definitions used, and provisions contained, in this Disclosure Statement and the Plan, the definitions and provisions contained in the Plan shall control (except where otherwise specifically noted). For ease of reference, those definitions are repeated below:

# DEFINITIONS AND RULES OF CONSTRUCTION

In addition to such other terms as are defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in this Disclosure Statement.

1.      **"Administrative Claim"** means a claim for costs and expenses of administration of the Reorganization Case under section 503(b) of the Bankruptcy Code entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code.

2.      **"Affiliate"** means with regard to any Person, (a) any Person, directly or indirectly, controlled by, under common control of, or controlling such Person; (b) any subsidiary

of such Person or any parent entity of such Person; (c) any Person, directly or indirectly, in which such Person holds, of record or beneficially, ten percent (10%) or more of the equity or voting securities, membership interests or partnership interests; (d) any Person which holds, directly or indirectly, of record or beneficially, ten percent (10%) or more of the equity or voting securities, membership interests or partnership interests of such Person; (e) any Person that, through contract, relationship or otherwise, exerts a substantial influence on the management of such Person's affairs; or (f) any Person that, through contract, relationship or otherwise, is influenced substantially in the management of its affairs by such Person.

3.     **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

4.     **"Allowed Claim" or "Allowed Partnership Interest"** means, respectively, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or a Partnership Interest, proof of which was timely and properly Filed or, if no proof of claim or proof of interest was Filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

> **a.**     no objection to the allowance thereof has been interposed on or before the later of: (i) the forty-fifth (45th) day after the Effective Date, or (ii) the thirtieth (30th) day after proof of such Claim or Partnership Interest is filed, or (iii) such other applicable period for objection as may be fixed or extended by the Court, or
>
> **b.**     any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Court, an "Allowed Claim" shall not include any interest, fees, costs or other charges on such Claim accruing after the Petition Date.

5.     **"Allowed Priority Tax Claim"** means all or that portion of a Priority Tax Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

6.     **"Allowed Secured Claim"** means all or that portion of a Secured Claim which

has been allowed pursuant to a Final Order of the Bankruptcy Court.

7.    **"Allowed Unsecured Claim"** means all or that portion of an Unsecured Claim allowed by Final Order of the Bankruptcy Court.

8.    **"Assumed Lender Amount"** shall equal the outstanding balance due the Secured Lender on the Effective Date after giving effect to the Effective Day Payments made to the Secured Lender pursuant to the terms of the Plan.

9.    **"Avoidance Actions"** means all of the Debtor's and the Estate's rights and claims under sections 541 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or common law, whether or not an action is initiated on or before the Effective Date.

10.    **"Ballot"** means the form to be distributed with the Disclosure Statement to each holder of an Impaired Claim or Partnership Interest on which the holder is to indicate acceptance or rejection of the Plan.

11.    **"Balloting Deadline"** means the date and time, as set by an Order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots must be received at the address set forth used for voting on the Plan, as such date may be extended by an order.

12.    **"Bankruptcy Code"** means Title 11 of the United States Code, or the Bankruptcy Reform Act of 1978, as amended.

13.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Louisiana or, in the event such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Eastern District of Louisiana.

14.    **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, (b) the Federal Rules of Civil Procedure and (c) the Local Rules of the Bankruptcy Court,

as applicable from time to time in the Reorganization Case, or proceedings therein, as the case may be.

15. **"Business Day"** means any day other than a Saturday, Sunday or any Federal holiday in the United States.

16. **"Cash"** means cash or cash equivalents.

17. **"Causes of Action"** means, without limitation, any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, debts, sums of money, damages, judgments, claims and demands, actions, defenses, offsets, powers (including all police, regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable. For avoidance of doubt, Causes of Action include, but are in no way limited to (a) damages, (b) the recovery of monies, (c) lien avoidance, subordination, surcharge, recharacterization, rights of setoff, contribution, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (d) tax refunds, (e) injunctive, equitable or other relief, (f) claims pursuant to Section 362 of the Bankruptcy Code, (g) such claims and defenses as fraud, mistake, duress, and usury, (h) Avoidance Claims, and (i) all causes of action that may be directly or derivatively asserted on behalf of the Debtor, its Estate, or the Reorganized Debtor.

18. **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

19. **"Class"** means a category of holders of Claims or Partnership Interests classified together pursuant to section 1123(a)(11) of the Bankruptcy Code.

20. **"Closing"** means the actual consummation of the transactions contemplated by the Purchase and Sale Agreement.

21. **"Closing Date"** means the actual date upon which the Closing occurs.

22. **"Collateral"** means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code, applicable state law, or other applicable law.

23. **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

24. **"Confirmation Hearing"** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

25. **"Confirmation Order"** means the order of the Bankruptcy Court entered following the Confirmation Hearing that confirms the Plan.

26. **"Debtor"** means Northcastle, Ltd.

27. **"Debtor in Possession"** means the Debtor between the Petition Date and the Effective Date.

28. **"Debtor's Cash"** means (1) the Cash held by the Debtor on the Effective Date or held in an escrow account or as unapplied funds, (2) any Cash or any cash collateral owned by or in which the Debtor has an interest under Section 541 of the Bankruptcy Code held by the Secured Lender on the Effective Date and (3) any Cash owned by or in which the Debtor has an interest under Section 541 of the Bankruptcy Code held by any receiver, custodian or similar person or entity on the Effective Date including any deposits made by the Debtor.

29. **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the

Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

30. **"Disallowed Interest"** means a Partnership Interest or any portion thereof that has been disallowed by a Final Order or a settlement.

31. **"Disbursing Agent"** means any entity designated pursuant to the Plan to hold and distribute property under the Plan.

32. **"Disclosure Statement"** means the Disclosure Statement for the Debtor to accompany the Plan, as modified or amended, Filed with and approved by the Bankruptcy Court.

33. **"Disputed Claim"** or **"Disputed Interest",** mean any Claim or Partnership Interest, that is not an Allowed Claim or a Disallowed Claim, or an Allowed Interest or a Disallowed Interest, as the case may be. In the event that any part of a Claim or Interest is disputed, such Claim or Interest in its entirety shall be deemed to constitute a Disputed Claim or a Disputed Interest for purposes of distribution under the Plan unless a Final Order has been entered providing otherwise. Without limiting any of the foregoing, a Claim or Interest that is the subject of a pending objection, motion, complaint, counterclaim, setoff, Avoidance Actions, Transferred Avoidance Actions, litigation claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim or Disputed Interest, as the case may be.

34. **"Effective Date"** shall have the meaning ascribed to it in Article VII(A)(1) of the Plan.

35. **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

36. **"File"** or **"Filed"** means filed with the Bankruptcy Court in the Reorganization

Case, as reflected on the official docket of the Bankruptcy Court for the Reorganization Case.

37. **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule of the Bankruptcy Rules, may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

38. **"General Partner"** means 8100 Mopac, L.L.C., the holder of the general Partnership Interest in the Debtor.

39. **"Impaired"** means a Claim or Interest or a Class of Claims or a Class of Interests that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

40. **"ING Clarion"** shall mean ING Clarion Capital Loan Services, LLC f/k/a ING Clarion Partners, LLC who acts as the special servicer for Secured Lender (defined herein).

41. **"Interest"** means the interest of any current or former holder of an "equity security" (as defined in Section 101(16) of the Bankruptcy Code), and includes all Partnership Interests.

42. **"Joint Motion"** shall mean the Joint Motion of Northcastle Ltd. and ING Clarion Capital Loan Services LLC for Order Approving Settlement and Release Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Dispersal Of Funds to ING Clarion Capital

Loan Services dated April 7, 2008.

43. **"Liens"** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

44. **"Limited Partners"** means 1992 Houston Partnership, L.P. and Douglas C. Chiles, the holders of the limited Partnership Interests in the Debtor.

45. **"Mechanic's Lien Claims"** means those Claims in Classes 2 through 4 asserted by the holder of such Claim as being secured by a mechanic's lien under state law.

46. **"Motion to Sell"** means the Motion for New Trial and Motion (I) for Authority to Sell Property Free and Clear of Liens, Mortgages, Privileges and Encumbrances Pursuant to Bankruptcy Code Section 363; (II) to Establish Bidding Procedures; and (III) to Assume Tenant Leases Pursuant to Bankruptcy Code filed by the Debtor on January 11, 2008.

47. **"Net Sale Proceeds"** means the Purchase Price less the expenses, liabilities or costs paid or due by the Debtor or Reorganized Debtor in connection with the Closing as contemplated by the Purchase and Sale Agreement (including those payments required to comply with the requirements of any Title Company to meet the Requirements of the Purchase and Sale Agreement) or the Sale Order (including, without limitation, any real estate commissions due by Debtor or Reorganized Debtor pursuant to the Purchase and Sale Agreement) or by order of this Bankruptcy Court.

48. **"Partners"** means, collectively, the General Partner and the Limited Partners.

49. **"Partnership"** means the Debtor, Northcastle, Ltd.

50. **"Partnership Agreement"** means the Agreement of Limited Partnership for Northcastle, Ltd., a Texas limited partnership, dated as of December 12, 1994, as may have been modified or amended prior to the Petition Date.

51. **"Partnership Interests"** means the respective legal, equitable, contractual and other rights and ownership interests of the General Partner and the Limited Partners in and with

respect to the Debtor.

52. **"Petition Date"** means November 5, 2007.

53. **"Plan"** means the plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time by the Debtor or the Reorganized Debtor in accordance with the Bankruptcy Code and Bankruptcy Rules.

54. **"Pro Rata"** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim or Allowed Partnership Interest in a Class to the amount of such Allowed Claim or Allowed Partnership Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Allowed Partnership Interests in such Class.

55. **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

56. **"Property"** means that certain real property, with all buildings and improvements thereon, located at 8100 Mopac Expressway, Austin, Travis County, Texas 78759.

57. **"Purchase and Sale Agreement"** means the agreement by and among the Debtor and the Purchaser pursuant to which Purchaser acquired the Sale Assets from the Debtor, and the Debtor transferred the Sale Assets to Purchaser.

58. **"Purchase Price"** means the amount for which the Debtor sold the Sale Assets to the Purchaser pursuant to the Purchase and Sale Agreement.

59. **"Purchaser"** means Steelwood.

60. **"Reorganization Case"** means this bankruptcy case under chapter 11 of the Bankruptcy Code.

61. **"Reorganized Debtor", or "Reorganized Northcastle"** means the Debtor, as revested with property of the Estate to the extent provided in the Plan, on or after the Effective Date.

62.	**"Retained Causes of Action"** means any and all Causes of Action, demands, defenses, suits, judgments, choses in action, licenses, privileges, agreements, and all other rights and remedies (legal or equitable) of the Debtor and the Estate, for or on behalf of Creditors and/or the Debtor and/or the Estate, including but not limited to any Causes of Action by the Estate and/or the Debtor, against any and all Creditors, Governmental Units, or other Persons, of every kind or nature, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity, and whether or not brought as of the Effective Date, including but not limited to those for (i) damages, (ii) the recovery of monies, (iii) lien avoidance, subordination, surcharge, recharacterization, setoff, counterclaim, contribution or recoupment, (iv) tax refunds, (v) claims and defenses such as fraud, mistake, duress and usury, (vi) claims on contracts or for breaches of duties imposed by law, (vii) injunctive, equitable or other relief, (viii) claims and Causes of Action that may be asserted derivatively on behalf of the Debtor, the Estate or the Reorganized Debtor (ix) claims and Causes of Action pursuant to section 362 of the Bankruptcy Code, and (x) all Avoidance Actions.

63.	**"Sale Assets"** means the Property described in the Purchase and Sale Agreement sold to Purchaser, as more generally described as the real estate, with all buildings and improvements thereon, and certain personal property comprising the apartment complex known as the Northcastle Apartment Homes, a/k/a Northcastle Apartments, located at 8100 Mopac Expressway, Austin, Texas 78759.

64.	**"Sale Motion"** shall mean the Motion filed by the Debtor dated January 11, 2008 to sell the Sale Assets to Steelwood.

65.	**"Sale Order"** means the order entered by the Bankruptcy Court granting the Motion to Sell and Motion for New Trial approving the transfer of the Sale Assets or approving the transfer of the Sale Assets as part of the Confirmation Order.

66.	**"Sales Proceeds"** shall mean the Net Sales Proceeds actually paid to the Debtor

on the closing of the sale incident to the sale of the Sale Assets to the Purchaser less and except for the following:

a) amounts due or paid to Allowed Priority Tax Claimants;

b) amounts due or paid to the holder of claims in Classes 2 through 5;

c) the Secured Lender Loan Balance; and

d) amounts owed to the Buyer under the Purchase and Sale Agreement.

67. **"Scheduled"** means set forth, stated or listed on the Schedules.

68. **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

69. **"Secured Claim"** means any claim that is secured by a valid, perfected and unavoidable lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, and determined under section 506 of the Bankruptcy Code.

70. **"Secured Lender"** means Wells Fargo Bank, N.A. f/k/a Wells Fargo Bank Minnesota, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2003-C3, and any affiliates, successors, or assigns thereof.

71. **"Secured Lender Loan"** means all claims of the Secured Lender evidenced by, arising under, or relating to the Secured Lender Loan Documents.

72. **"Secured Lender Loan Documents"** means all documents evidencing the Secured Lender Loan, including but not limited to i) the Promissory Note in the original principal amount of $8,175,000.00 dated as of June 2, 2004, between the Secured Lender, as the assignee of PNC Bank, National Association, and the Debtor, ii) the June 2, 2004 Deed of Trust and iii) the June 2, 2004 Assignment of Leases and Rents, executed by the Debtor to Kevin A. Sullivan,

as Trustee, in favor of the Secured Lender, as the assignee of PNC Bank, National Association, iv) the June 2, 2004 Assignment of the above note and liens to the Secured Lender by PNC Bank, National Association, v) the Fixture Filing dated June 8, 2004, and vi) any other documents relating thereto, all as may have been amended.

73.     **"Steelwood"** means Steelwood Operating Company, L.L.C., a Texas limited liability company.

74.     **"Settlement Amount"** shall mean one-half of the sum remaining after the following calculation:

      a)     Sales Proceeds plus Debtor's Cash less;

      b)     Secured Lender Loan Balance;

      c)     Payments to Brokers in connection with the sale of the Sale Assets to Purchaser;

      d)     Payments to creditors possessing allowed claims in Classes 2 through 5;

      e)     Administrative Claims incurred through the Effective Date;

      f)     Payments to taxing authorities; and

      g)     Closing Costs and other sums due incident to the Sale of the Sale Assets to the Purchaser.

75.     **"Unsecured Claim"** means any claim that is not an Administrative Claim, Priority Claim, Secured Claim, or a Claim otherwise specifically classified in another class in the Plan.

## I.   PURPOSE AND SUMMARY OF THE PLAN

**THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY.  HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW AND ANALYZE THE PLAN IN ITS ENTIRETY.**

The primary purpose of the Plan is to distribute Sales Proceeds and Debtor's Cash, as defined in the Plan, generated by the sale of all of the assets of the Debtor and to pay or satisfy the claims of the creditors in the following order from the proceeds of the sale and the Debtor's Cash.  The

following creditors and classes have either been paid or will be paid pursuant to the Plan will receive distribution pursuant to the Plan:

1) Allowed Secured Lender Claims;

2) Allowed Administrative Claims;

3) Allowed Camp Roofing, Inc. Mechanic's Lien Claims;

4) Allowed Fun-n-Sun Pools of Austin, Inc. Mechanic's Lien Claims;

5) Allowed Landscapes USA Mechanic's Lien Claims;

6) Allowed Other Secured Claims;

7) Allowed Priority Tax Claims;

8) Allowed Unsecured Claims.

## II. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**A.** The Plan contemplates payment of all Allowed Claims against and no payment to holders of Interest in the Debtor as follows:

**1.** As provided in the Plan, pursuant to the transfer of the Sale Assets for Cash, the Allowed Secured Lender Claims in Class 1 were (excluding the Settlement Amount) paid under the terms of the settlement approval by the Court from the Sales Proceeds. The Settlement Amount shall be paid to the Secured Lender from the Debtor's Cash.

**2.** The remaining Claims against and Interests in the Reorganized Debtor either have been paid or will be paid from the Sales Proceeds or the Debtor's Cash as set forth below:

| CLASS OR DESIGNATION | TREATMENT |
|---|---|
| | |

| | |
|---|---|
| **Unclassified. Allowed Administrative Claims.**<br><br>Approximately $40,000 projected through the Effective Date. | Unimpaired. Not entitled to vote.<br><br>**a. Generally.** Subject to the bar date provisions herein, the Disbursing Agent shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment.<br>**b. Payment of Statutory Fees.** Any fees due to the U.S. Trustee's Office pursuant to 28 U.S.C. § 1930 will be paid as they become due and will be paid until entry of a final decree in these proceedings.<br><br>**c. Bar Date for Administrative Claims.**<br>    **i. General Provisions.** Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be Filed no later than thirty (30) days after the Effective Date. Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to File a request for payment of such claims and that do not File such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property. Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.<br>    **ii. Professionals.** All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.<br>    **iii. Ordinary Course Liabilities.** Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims. Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.<br><br>Estimated percentage recovery: 100% |
| **Unclassified: Allowed Priority Tax Claims.**<br><br>This entire amount of Priority Tax Claims is comprised of property taxes payable to Travis County Taxing Authority. | The holder of an Allowed Priority Tax Claim has received, on account of and in full satisfaction of such Allowed Priority Tax Claim: Cash.<br><br>Paid in Full. |

| | |
|---|---|
| **Class 1. Secured Lender Claims.**<br><br>The Secured Lender is Wells Fargo Bank, N.A. f/k/a/ Wells Fargo Bank Minnesota, N.A. as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2003-C3, and any affiliates, successors, or assigns thereof. The Secured Lender at closing was paid $8,219,261.00. | Impaired. Entitled to vote.<br><br>The Debtor has paid to the Secured Lender from the Sales Proceeds the following:<br>**a.** the outstanding principal balance and all unpaid interest (at the non default interest rate) through the date of payment;<br>**b.** actual and reasonable costs that have been incurred by the Secured Lender that are allowable under 11 U.S.C. Section 506(b);<br>**c.** reasonable legal fees incurred by the Secured Lender;<br>**d.** late fees from the date of a payment default through the date of payment;<br>**e.** a one (1%) percent disposition fee calculated on the amount received by the Secured Lender in (a) above<br>**(collectively referred to as the "Secured Lenders Loan Balance")**<br>The only amount remaining to be paid to the Class 1 creditors on the Effective Date is the Settlement Amount. The Debtors estimate this amount to be $195,000, half of the cash on hand or approximately $185,000. However, this sum may be $75,00 or more lower if Steelwood/Persimmon/Northcastle, LP is successful in obtaining $150,000 in the adversary entitled *Heritage Title Company of Austin v. Northcastle, et al* pending in the Eastern District and bearing adversary number 09-01062.<br><br>Estimated percentage recovery: 100% |
| **Class 2. Camp Roofing, Inc. Mechanic's Lien Claim.** | The Class 2 Claim has been paid in full and in cash the Allowed Amount of its Class 2 Claim.<br><br>Paid in Full. |
| **Class 3. Fun-n-Sun Pools of Austin, Inc. Mechanic's Lien Claim.** | The Class 3 Claim has been paid in full and in cash the Allowed Amount of its Class 3 Claim.<br><br>Paid in Full. |
| **Class 4: Landscapes USA Mechanic's Lien Claim.** | The Class 4 Claim has been paid in full and in cash the Allowed Amount of its Class 4 Claim.<br><br>Paid in Full. |
| **Class 5: Other Secured Claims.** | The Class 5 Claims have been paid in full and in cash the Allowed Amount of their Class 5 Claims.<br><br>Paid in Full. |

| Class 6: General Unsecured Claims. | Impaired. Entitled to Vote. |
|---|---|
| | Class 6 is impaired under the Plan and the holders of Class 6 Claims are allowed to vote on the Plan. The holder of a Class 6 Claim will be paid pro-rata with the other holders of Class 6 Claims from the Debtor's Cash after payment of the Class 1-5 Claims. |
| The total estimate of Allowed General Unsecured Claims is approximately $893,150.41 according to the Debtor's Schedules. | |
| According to the Debtor's Schedules, the following is a list of the parties believed to hold MBS Related Party Unsecured Claims against the Debtor and the estimated amount of each such Claim. All of the MBS Related Party Unsecured Claims listed below were incurred on account of operating payment shortfalls and are represented by Promissory Notes. | The Debtor believes that MBS Realty Investors, Ltd., MBS Opportunity Fund, MBS Opportunity Fund II and MBS Services, Ltd. may be insiders but considering the Debtor's estimate that no more than $195,000 will be available to pay Class 6 Claims, the Debtor does not believe it makes sense to attempt to subordinate any claims.<br><br>(1) MBS Opportunity Fund II, Ltd.: $227,062.50<br>(2) MBS Opportunity Fund, Ltd.: $405,862.49<br>(3) MBS Management Services, Ltd.: $55,960.01<br>(4) MBS Realty Investors, LTD.: $154,110.12 |
| There are no Limited Partner Unsecured Claims against the Debtor. | |
| | Estimated percentage recovery: 20% |

## B.    INTERESTS UNDER THE PLAN

The following is a summary of the classification and treatment of Interests under the

Plan:

| Class 7: Partnership Interests. | Impaired. Deemed Rejected. |
|---|---|
| | Class 7 is impaired under the Plan and each holder of a Class 7 Interest is deemed to reject the Plan. The holders of Partnership Interests in the Debtor shall not receive any distribution under the Plan.<br><br>Estimated Recovery: Zero. |

## III.   GENERAL OVERVIEW AND BACKGROUND INFORMATION

**A.      BACKGROUND AND GENERAL INFORMATION**

### 1.      Overview

In 1986, a number of corporations (collectively, the "MBS Companies") were organized to provide institutions, corporations and investors with a broad and complementary array of real estate-oriented services. The MBS Companies combined affiliates that specialize in research, acquisitions, asset management, property management, consulting, brokerage and other related real estate services to excel in acquiring multifamily properties.

In 1987, MBS Realty Investors, Ltd. ("MBSRI"), a Louisiana Partnership in commendam, was formed as a real estate holding company. MBSRI specializes in the formation of partnerships to acquire, improve, and operate these multifamily properties for investment purposes.  MBSRI has formed multiple partnerships, including that of the Debtor.

In 1994, MBSRI formed the Debtor, a single asset real estate partnership, in order to acquire a certain multifamily residential apartment community in Austin, Texas. As a single asset real estate partnership, the Debtor's primary asset is the multifamily residential apartment complex owned by the Debtor (the "Property").

Currently, the Debtor is owned by various investors who hold limited and general Partnership Interests in the Debtor.

To assist the Debtor with leasing, maintenance coordination, and on-site and regional management of the apartment complex, the Debtor entered into contracts with M.B.S. Management Services, Inc. ("MBS Management"). MBS Management is an asset management company specializing in the day to day physical property management of the multifamily property.  However,

the property owned by the Debtor is no longer being managed by MBS Management, but is now being managed by MBS Realty Investors, Ltd.

## 2. Debtor's Corporate Structure

M.B.S. Financial Corporation ("MBSFC") is owned by Michael and Carol Smuck, and M.B.S. Investments, Inc. ("MBSI") is owned by MBS Financial Group, Inc. which is also owned by Michael and Carol Smuck. MBSFC and MBSI each own 50% of M.B.S. Capital Planning, Inc.("MBSCP"), a Louisiana corporation, which in turn, owns 98% of MBSRI, the entity that formed the Debtor. Michael Smuck owns the remaining 2% of MBSRI. MBSCP is the general partner of MBSRI, and Michael Smuck is the President of MBSCP.

The General Partner of the Debtor, 8100 Mopac, L.L.C., is a Texas limited liability company controlled by its Managing Member, Michael Smuck. MBSRI is also a Member of the General Partner.

The Limited Partners of the Debtors are 1992 Houston Partnership, L.P. and Douglas C. Chiles.

## 3. Operating History

The following table details the Debtor's operating history for the years 2005, 2006 and 2007. The information in the following table is from a December 28, 2007 appraisal of the Property prepared by CB Richard Ellis.

| OPERATING HISTORY | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Year-Occupancy | 2005 | | 92.0% | | 2006 | | 92.0% | | 2007 Annualized | | 81.0% | |
| Income | Total | %EGI | $/Unit | $/SF | Total | %EGI | $/Unit | $/SF | Total | %EGI | $/Unit | $/SF |
| Potential Rental Income | $1,232,576 | 95.0% | $7,250 | $7.91 | $1,214,809 | 95.0% | $7,146 | $7.80 | $1,019,146 | 94.4% | $5,995 | $6.54 |
| Other Income | 31,603 | 2.4% | 186 | .20 | 32,296 | 2.5% | 190 | .21 | 27,305 | 2.5% | 161 | 0.18 |
| RUBS/Utility Income | 33,166 | 2.6% | 195 | .21 | 31,093 | 2.4% | 183 | .20 | 33,674 | 3.1% | 198 | 0.22 |
| Effective Gross Income | $1,297,345 | 100% | $7,631 | $8.33 | $1,278,199 | 100.0% | $7,519 | $8.21 | $1,080,125 | 100.0% | $6,354 | $6.94 |
| | | | | | | | | | | | | |
| Expenses | | | | | | | | | | | | |
| Real Estate Taxes | $169,862 | 13.1% | $999 | $1.09 | $156,796 | 12.3% | $922 | $1.01 | $155,071 | 14.4% | $912 | $1.00 |
| Property Insurance | 36,177 | 2.8% | 213 | .023 | 53,437 | 4.2% | 314 | 0.34 | 46,999 | 4.4% | 276 | 0.30 |
| Utilities | 99,704 | 7.7% | 586 | .064 | 88,929 | 7.0% | 523 | 0.57 | 62,501 | 5.8% | 368 | 0.40 |
| Trash Removal | 11,848 | 0.9% | 70 | 0.08 | 13,969 | 1.1% | 82 | 0.09 | 11,138 | 1.0% | 66 | 0.07 |
| Administrative & General | 8,008 | 0.6% | 47 | 0.05 | 10,348 | 0.8% | 61 | 0.07 | 11,455 | 1.1% | 67 | 0.07 |
| Repairs & Maintenance | 30,425 | 2.3% | 179 | 0.20 | 30,670 | 2.4% | 180 | 0.20 | 28,325 | 2.6% | 167 | 0.18 |
| Landscaping & Security | 19,756 | 1.5% | 116 | 0.13 | 18,050 | 1.4% | 106 | 0.12 | 20,110 | 1.9% | 118 | 0.13 |
| Management Fee | 51,619 | 4.0% | 304 | 0.33 | 52,800 | 4.1% | 311 | 0.34 | 45,257 | 4.2% | 266 | 0.29 |
| Payroll | 170,478 | 13.1% | 1,003 | 1.09 | 154,869 | 12.1% | 911 | 0.99 | 127,726 | 11.8% | 751 | 0.82 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Advertising & Promotion | 14,606 | 1.1% | 86 | 0.09 | 12,440 | 1.0% | 73 | 0.08 | 10,942 | 1.0% | 64 | 0.07 |
| Other | - | 0.0% | - | - | - | 0.0% | - | - | - | 0.0% | - | - |
| Reserves for Replacement | - | 0.0% | - | - | - | 0.0% | - | - | - | 0.0% | - | - |
| Operating Expenses | $612,483 | 47.2% | $3,603 | $3.93 | $592,308 | 46.3% | $3,484 | $3.80 | $519,525 | 48.1% | $3,056 | $3.34 |
| **Net Operating Income** | $684,862 | 52.8% | $4,029 | $4.40 | $685,891 | 53.7% | $4,035 | $4.40 | $560,601 | 51.9% | $3,298 | $3.60 |

Annualized Amounts Represent 6 months
Source: CBRE Appraisal, December 2007

### 4.     The Property

Northcastle Apartment Homes were built in 1970.  The Property is comprised of 18 two-story buildings located on 7.36 acres and a gross building area of 159,696 square feet.  The Property contains 170 units with an average unit size of 916 square feet.  The current occupancy is 53.5% and the stabilized occupancy is 91%.  The Property is in poor condition.  This information is from an appraisal dated December 28, 2007 prepared by CB Richard Ellis.  Exhibits containing detailed information about the Property are attached to the Disclosure Statement.

### B.     THE DEBTOR'S MANAGING MEMBER

The Managing Member of the Debtor is MBS Realty Investors, Ltd.

### C.     THE DEBTOR'S DEBT STRUCTURE

The Debtor executed a promissory note dated June 2, 2004 in the original principal amount of $8,175,000.00, payable to PNC Bank, N.A. (the "Note").  Said Note is secured by the June 2, 2004 Deed of Trust and additionally secured by an Assignment of Rents and Leases.  The Note and these liens were assigned to Wells Fargo Bank, N.A., Trustee for the registered holder of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-C3.  The Debtor also filed a Financing Statement on June 8, 2004 granting unto PNC Bank, N.A. as creditor and secured party, a security interest in the subject property.  The Financing Statement (which, along with the Note, Deed of Trust and Assignment of Rents and Leases are hereafter referred to as the "Secured Lender Loan Documents") was assigned to Wells Fargo Minnesota, N.A. Trustee, on January 23, 2006.  The Secured Lender contends that an amount in

excess of $9,600,000.00 including default interest and yield maintenance premium is owed by the Debtor on the Note.

Additional debt of the Debtor consists of the following: estimated Administrative Claims of approximately $40,000.00; and approximately $893,150.41 in Unsecured Claims of which $830,070.13 are owed to possible related parties or insiders.

A listing of Claims or any amounts with respect thereto above or elsewhere in this Disclosure Statement shall not constitute, or be deemed to constitute, allowance of such Claims and all such Claims and amounts are subject, and will remain subject, to challenge and objection by the Debtor and the Reorganized Debtor prior to voting on the Plan and at any time thereafter as provided in the Plans, except to the extent allowed by the Bankruptcy Court or as agreed to by the Debtor in previous orders. At this point, the Debtor is not aware of any claims that will be subject to an objection.

**D.      EVENTS LEADING TO THIS CHAPTER 11 CASE**

There were a combination of events that precipitated the Debtor's Chapter 11 bankruptcy filing, including the inflated price paid for the Property when the Debtor purchased it for $6.1 million in 1994, the obligations incident to financing and the equity raise provided to the Partners.

Further, the devastation caused by Hurricane Katrina in 2005 significantly damaged the daily operations of MBS Management, such that, for a period of time, its business functions, and thus by extension, the business functions of the Debtor, were severely curtailed. The displacement of MBS Management from its business location in New Orleans caused a tremendous disruption in the normal operations of the Debtor, such that revenue was not timely collected, payments of operating expenses and debt service were not timely made, and normal daily management and repair of the properties were not timely undertaken.

As a result of the foregoing, the Debtor started to experience financial difficulties that hindered its abilities to timely comply with its secured debt obligations. In light of these factors, the

Debtor determined that it would be necessary to address and resolve its operational issues and financial difficulties by filing this Chapter 11 Case.

In order to avoid foreclosure and to protect what the Debtor believes to be value for creditors and at that time potentially Interest holders, the Debtor filed its petition for reorganization relief in the Bankruptcy Court.

## E. SIGNIFICANT POST-PETITION EVENTS

**1.** On November 5, 2007, Debtor filed for relief under Chapter 11 of the Bankruptcy Code. ("Petition Date"). On November 5, 2007, MBS Management filed for bankruptcy relief in the Bankruptcy Court, Case No. 07-12151. The Debtor filed a motion with the Bankruptcy Court requesting entry of an order authorizing the joint administration of its Chapter 11 Case with MBS Management for administrative purposes only [P-9]. The Bankruptcy Court subsequently granted the Debtor's motion to jointly administer [P-54].

**2. Other First Day Pleadings**

Following the filing of the petition, the Debtor filed, among other pleadings, the following "first day pleadings" with the Bankruptcy Court:

(a) Motion to Limit Notice [P-13] which motion was granted [P-52];

(b) Application Pursuant to Fed.R.Bankr.P. 2014(a) for Order Authorizing the Employment of the Law Firm of Heller, Draper, Hayden, Patrick, & Horn, L.L.C. as Counsel Pursuant to Section 327(a) of the Bankruptcy Code and Amended Application Pursuant to Fed.R.Bankr.P. 2014(a) for Order Authorizing the Employment of the Law Firm of Heller, Draper, Hayden, Patrick, & Horn, L.L.C. as Counsel Pursuant to Section 327(a) of the Bankruptcy Code [P-279], which application was granted [P-310];

(c) Motion for Authorization to Return Tenant Deposits [P-16], which motion was granted [P-183];

(d) Motion Pursuant to Section 366 of the Bankruptcy Code for Order Establishing Adequate Assurance of Payment of Utilities [P-14], which motion was granted [P-183]; and

(e) Motion of the Debtor Pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure for an Extension of Time to File Schedules of Assets and Liabilities,

Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs [P-17], which motion was granted [P-78].

3.    **Application to Employ Professionals**

On January 4, 2008, the Bankruptcy Court entered an order approving the Debtor's amended application to employ Heller, Draper, Hayden, Patrick & Horn, L.L.C. ("Heller Draper") [P-310].

On December 3, 2007, the Debtor filed its *Application by the Debtor for Entry of an Order Authorizing the Employment and Retention of Dwyer & Cambre as Special Counsel* (the "Dwyer & Cambre Application") [P-45]. After a hearing on December 11, 2007, the Bankruptcy Court granted the Dwyer & Cambre Application.

On December 13, 2007, the Bankruptcy Court entered an order approving the employment of FTI Consulting, Inc. (the "FTI Order") [P-184] to provide interim management to MBS Management and thereby designate Robert Medlin as Chief Restructuring Officer. As the Debtor was not included in the FTI Order, on January 9, 2008, the Debtor filed *Motion to Amend Application Pursuant to Fed.R.Bank.P. 2014(a) for Order under Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of FTI Consulting, Inc. to Provide Interim Management to the Debtor and Thereby Designate J. Robert Medlin as Chief Restructuring Officer and for Interim Relief Pending Final Hearing* ("Motion to Amend") [P-319].  In the Motion to Amend, the Debtor sought the Bankruptcy Court's entry of an Amended Final Order allowing the Debtor, along with MBS Management, to retain FTI Consulting, Inc.  By Order dated February 20, 2008, the Court granted the Motion [P-543].

### 4. Compliance with Bankruptcy Code, Bankruptcy Rules, Local Court Rules, and U.S. Trustee Deadlines.

On December 20, 2007, the Debtor filed its Statements of Financial Affairs, Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and List of holders of Partnership Interests ("Schedules").

Pursuant to section 341 of the Bankruptcy Code, a meeting of creditors for the Debtor was held on January 3, 2008.

### 5. Motion for Relief from Stay

On December 14, 2007, ING Clarion Partners, LLC ("ING") filed ING Clarion Partners, *LLC's Motion for Relief from the Automatic Stay as to Real Estate Debtor Fountains of Tomball, Ltd., MBS-Serrano, Ltd., MBS-The Windward, Ltd., MBS-The Leeward, Ltd., and Northcastle, Ltd.* [P-202] ("Motion for Relief") seeking the modification of the automatic stay so that ING could foreclose on certain properties, including the property owned by the Debtor. The hearing on the Motion for Relief was scheduled for January 9, 2008. On January 14, 2008, the Bankruptcy Court entered an Order Granting in Part the Motion for Relief (the "Lift Stay Order"). The automatic stay was lifted to permit ING to post for foreclosure the Property on or before January 15, 2008 and to allow the Secured Lender and ING to exercise their rights and remedies under the Secured Lender Loan Documents. The Lift Stay Order also provides that the automatic stay shall be reimposed if the Debtor obtains a contract for the Sale of the Property prior to the date of the Foreclosure Sale on February 5, 2008, or file a Plan with an equity sponsor providing for the payment of the Secured Lender. The Debtor was able to obtain a contract for sale of the property and avoid a foreclosure sale of the property.

### 6. Motion to Sell

On February 1, 2008, the Debtor filed its Motion for Authority (i) to Sell Property Free and Clear of Interests, Liens, Mortgages, Privileges and Encumbrances Pursuant to Bankruptcy Code Section 363; (ii) to Establish Bidding Procedures; and (iii) to Assume Tenant Leases Pursuant to Bankruptcy Code Section 365 (the "Motion to Sell"). The Motion to Sell was heard by the Bankruptcy Court on January 25, 2008. Due to an issue in the order approving the Motion to Sell, a Motion for New Trial was filed and the order entered in connection with that motion governed the sale process for the Debtor's property. A contract was entered with Steelwood as the "stalking horse" purchaser. The Debtor solicited bids from third parties, however, no higher and better offer was received and an order was entered approving the sale to Steelwood.

An issue with regard to the sale was an assertion by ING Clarion that it was entitled to receive a "yield maintenance premium" and default interest which would have the effect if allowed of giving ING 100% of the sale proceeds.

Ultimately, ING Clarion reached an agreement with the Debtor concerning the payment of a yield maintenance premium and default interest. The settlement is embodied in the Plan and a Joint Motion filed by ING Clarion and the Debtor. The Court approved the Joint Motion at a hearing held April 28, 2008. The sale has closed and payments were made pursuant to the Sale Order.

### 7. Complaint for Interpleader.

A dispute exists over the terms of the Purchase and Sale Agreement between the Debtor and the Purchaser. The title company holding $150,000 in escrow has filed a complaint with this Court and will seek to deposit the money into the Registry of the Court.

### IV. THE PLAN

The Debtor has proposed the Plan and believes that the classification and treatment of Claims and Partnership Interests provided for in the Plan are consistent with the requirements of the

Bankruptcy Code. Under the Bankruptcy Code, holders of Allowed Claims against and Partnership Interests in the Debtor that are Impaired and that receive distributions under the Plan are entitled to vote on the Plan. A copy of the Plan accompanies this Disclosure Statement as Exhibit D-1. A summary of the classification and treatment of Claims and Interests under the Plan is set forth above in Article II of this Disclosure Statement.

## A. VALUATION OF THE DEBTOR

The following table is a summary of appraisals which were ordered by counsel for ING Clarion and conducted by CBRE CB Richard Ellis on the Debtor's Property.

| Date of Appraisal | Appraised Value of Property |
|---|---|
| October 19, 2007 | $7,200,000.00 |
| December 28, 2007 | $5,390,000.00 |

In addition, approximately seven months prior to the Debtor's bankruptcy filing, a developer was interested in purchasing the Property for a significant sum, contingent upon the developer's ability to have the Property re-zoned to allow the developer to tear down the existing units and re-build even more units on the site. A re-zoning of the Property was key to the developer's gaining the maximum value and usage of the Property, which sits on extremely valuable land considered to be prime real estate in Austin. The re-zoning change was never finalized and the proposed sale fell through. If the re-zoning of the real estate could be accomplished, the value of the Property would increase substantially.

The Debtor entered into a Purchase and Sale Agreement to sell the Property for $9,600,000.00. The sale has closed.

## B. OBJECTIONS TO CONFIRMATION

The Debtor does not expect any objections to confirmation due to the fact that it has reached an agreement with ING Clarion.

## C. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### 1. Vesting of Assets And Operations of Property.

(1) All remaining property of the Estate (including the debtor in possession bank accounts, Cash held by any receiver, custodian or similar person or entity, and the Retained Claims and Causes of Action) shall revest in the Reorganized Debtor free and clear of all claims, liens, encumbrances and other interests of creditors and holders of interests.

(2) On the Effective Date, pursuant to the Plan and the Confirmation Order, any receiver, custodian or similar person or entity appointed prior to the Effective Date for the Debtor or any of its property shall be terminated and discharged from its responsibilities and duties and all property, including Cash, of the Debtor held by such receiver, custodian or similar person or entity shall be immediately turned over to the Reorganized Debtor, without setoff or offset.

### 2. Funding of the Plan.
The Debtor will use the Sales Proceeds and Debtor's Cash to fund the payments due under the Plan.

### 3. Dissolution of Debtor.

Upon the liquidation of all of the assets of the Debtor or the Estate which are vested in the Reorganized Debtor pursuant to the Plan, payment of all Claims and Partnership Interests in accordance with the Plan, payment of the Reorganized Debtor's post-Effective Date fees and expenses, including but not limited to wind down costs and other expenses, and the completion of all other actions of or by the Reorganized Debtor contemplated in the Plan, the Reorganized Debtor shall be deemed to be dissolved under applicable state law without the necessity of any further action or approval by the holders of Claims or Interests in the Debtor or the Reorganized Debtor, all of which shall be deemed to have been given or occurred. The General Partner of the Reorganized Debtor is authorized to execute any notices, instruments, pleadings or other documents, or make any

filing, deemed necessary or useful in his discretion to reflect or document the dissolution of the Reorganized Debtor.

### 4. Discharge of Debtor and Injunction

Except as otherwise specifically provided in the Plan, the rights afforded in the Plan and the treatment of all Claims and Partnership Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Partnership Interests of any nature, whatsoever, including, any interest accrued on such claims from and after the Petition Date against the Debtor, the Debtor in Possession, or any of their assets or properties. Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date: (i) the Debtor shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all claims and interests, including claims and interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code whether or not: (a) a proof of claim or proof of interest based on such debt or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a claim or interest based on such debt or interest is allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of a claim or interest based on such debt or interest has accepted the Plan; and (ii) all persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, Purchaser, their successors, or their respective assets or properties any other or future claims or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all persons who have held, currently hold or may hold a debt, claim, or interest discharged under the Plan are permanently enjoined from taking any of the following actions on account of any such discharge, debt, claim, or interest: (1) commencing or continuing in any manner

any action or other proceeding against the Debtor, the Reorganized Debtor, Purchaser, their successors, or their respective properties; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, Reorganized Debtor, Purchaser, their successors, or their respective properties; (3) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, Reorganized Debtor, Purchaser, their successors, or their respective properties; (4) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, Reorganized Debtor, Purchaser, their successors, or their respective properties; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

## 5.	Causes of Action

The Debtor does not believe it has any significant causes of action and therefore does not intend to pursue any causes of action.

## V.  EXECUTORY CONTRACTS

### A.	REJECTION

The Debtor is rejecting all executory contracts and unexpired leases that have not been previously assumed.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving all such rejections as of the Effective Date.  Any claims for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed within thirty (30) days after the Effective Date or be forever barred and unenforceable against the Debtor, Reorganized Debtor, and its property and barred from receiving any distribution under the Plan.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections of all executory contracts and unexpired leases which are not assumed and assigned under the Plan as of the Closing Date,  with the rejection effective as of the day before the Petition Date , as being burdensome and not in the best interest of the Estate.  Any claims for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed within thirty (30) days after the Effective Date or be forever barred and unenforceable against the Debtor, Reorganized Debtor, and its properties and barred from receiving any distribution under the Plan.

**B.     MANAGEMENT AGREEMENTS**

Upon the Effective Date, the Debtor shall reject its Management Agreement held with MBS Management and any third party pre-petition Management Agreements.

## VI.   CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and certain U.S. holders of Claims and Interests.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof.  Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section.  Certain tax aspects of the Plan are uncertain due to the lack of applicable regulations and other tax precedent.  The Debtor has not requested a ruling from the IRS

or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt.

TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND ANY INTERESTS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE TAX CODE, AND (b) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE PROMOTION OF THE PLAN.

HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT THEIR TAX ADVISOR TO DETERMINE THE AMOUNT AND TIMING OF ANY INCOME OR LOSS SUFFERED AS A RESULT OF THE CANCELLATION OF THE CLAIMS OR STOCK OPTIONS HELD BY SUCH PERSON, WHETHER SUCH INCOME OR LOSS IS ORDINARY OR CAPITAL AND THE TAX EFFECT OF ANY RIGHT TO, AND RECEIPT OF DEFERRED PAYMENT.

THE ABOVE DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, ALL HOLDERS SHOULD CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## VII.  LIQUIDATION ANALYSIS UNDER CHAPTER 7

Under the Bankruptcy Code, in order for a plan to be confirmed, each creditor must receive or retain under the Plan a recovery that has a value at least equal to the value of the distribution that such creditor would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Pursuant to the Debtor's Liquidation Analysis, attached to this Disclosure Statement as Exhibit D-2, the Debtor believes that recoveries under a Chapter 7 liquidation scenario would be slightly lower than that proposed by the Plan due to the fees payable to a Trustee.

## VIII.   CONFIRMATION PROCEDURE

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

## A.    VOTING AND OTHER PROCEDURES

A Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of Claims that are entitled to vote to accept or reject the Plan. Each holder of a Claim in Classes 1-6 shall be entitled to vote to accept or reject the Plan and each holder of a Partnership Interest in Class 7 shall be deemed rejected and not entitled to vote to accept or reject the Plan.

Pursuant to the provisions of the Bankruptcy Code, only holders of claims in classes of claims that are impaired under the terms and provisions of a chapter 11 plan and are to receive distributions thereunder are entitled to vote to accept or reject the plan. Classes of claims in which the holders of claims and interests will not receive or retain any property under a chapter 11 plan are deemed to have rejected the plan and are not entitled to vote to accept or reject the plan. Classes of claims in which the holders of claims or interests are Unimpaired under a Chapter 11 plan are deemed to have accepted the plan and also are not entitled to vote to accept or reject the plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims, as acceptance by creditors actually voting in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims; and (ii) interests, as acceptance by interest holders in that class actually voting that hold at least two-thirds in number of the shares of the common stock of a debtor.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or otherwise in accordance with the provisions of the Bankruptcy Code.

With respect to the Plan, any holder of a Claim or Partnership Interest in an Impaired Class (i) whose Claim or Partnership Interest has been listed by the Debtor in the Schedules filed with the Bankruptcy Court (provided that such Claim or Partnership Interest has not been scheduled as disputed, contingent or unliquidated), or (ii) who filed a proof of claim or interest on or before the bar date (or, if not filed by such date, any proof of claim or interest filed within any other period of limitations or with leave of the Bankruptcy Court), which Claim or Partnership Interest has not been disallowed and is not the subject of an objection, is entitled to vote. Holders of Claims or Partnership Interests that are disputed, contingent and/or unliquidated are entitled to vote their Claims or Partnership Interests only to the extent that such Claims or Partnership Interests are Allowed for the purpose of voting pursuant to an order of the Bankruptcy Court. The Debtor may seek a determination that any Class of Claims or Partnership Interests that is entitled to vote to accept or reject the Debtor's Plan that does not vote to accept or reject the Debtor's Plan be deemed to accept the Plan, as applicable.

After carefully reviewing the Disclosure Statement, including any exhibits, each holder of an Allowed Claim or Partnership Interest entitled to vote may vote whether to accept or reject the Debtor's Plan. A Ballot for voting on the Plan accompanies this Disclosure Statement. If you hold a Claim or Partnership Interest in more than one Class and you are entitled to vote Claims or Partnership Interests in more than one Class, you may receive a Ballot or Ballots, which will permit you to vote in all appropriate Classes of Claims or Partnership Interests. Please vote and return your Ballot to Heller, Draper, Hayden, Patrick & Horn, LLC as follows, whether by U.S. mail, or by hand delivery or courier service:

<div style="border: 1px solid black; text-align: center;">

**Heller, Draper, Hayden, Patrick & Horn, LLC**
**Attention: Douglas S. Draper**
**650 Poydras Street, Suite 2500**
**New Orleans, LA 70130**

</div>

ANY EXECUTED BALLOT THAT FAILS TO INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED. BALLOTS RETURNED TO THE HELLER, DRAPER, HAYDEN, PATRICK, & HORN, LLC BY FACSIMILE TRANSMISSION OR ANY OTHER ELECTRONIC MEANS WILL NOT BE COUNTED.

<div style="border: 1px solid black; text-align: center;">

**THE VOTING DEADLINE IS**
**5:00 P.M., CENTRAL**
**TIME ZONE, ON**
**_____ __, 2009.**

</div>

APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. ALL CREDITORS THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

**Ballots must be *received* by Heller, Draper, Hayden, Patrick, & Horn, LLC by the Voting Deadline.** If a Ballot is received after the Voting Deadline, it will not be counted. Complete the Ballot by providing all the information requested, and sign, date and return the Ballot by mail, overnight courier or personal delivery to Heller, Draper, Hayden, Patrick, & Horn, LLC at the address set forth above.

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.

ANY OBJECTIONS TO THE CONFIRMATION OF THE PLAN MUST BE FILED IN ACCORDANCE WITH AND NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.

If you are entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan, please telephone the Voting Agent at the following telephone number: **1-504-299-3300**.

## B.    DISCLAIMERS AND ENDORSEMENTS

This Disclosure Statement contains information about the Plan.  Holders of Claims and Partnership Interests are urged to study the text of the Plan carefully to determine the impact of the Plan on their Claims or Partnership Interests and to consult with their financial, tax and legal advisors.

Nothing contained in this Disclosure Statement or the Plan will be deemed an admission or statement against interest that can be used against the Debtor in any pending or future litigation. Any reference to creditors or Claims or Partnership Interests in this Disclosure Statement is not an admission with respect to the existence, ownership, validity, priority, or extent of any alleged Lien, Claim, Partnership Interest or encumbrance.

Certain statements and assertions in this Disclosure Statement may be subject to dispute by parties in interest.

## C.    THE CONFIRMATION HEARING

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing with respect to the Plan.  The Confirmation Hearing in respect of the Plan has been

scheduled for the date and time set forth in the accompanying notice before the Honorable Elizabeth Magner, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of Louisiana, **[insert date]**. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice other than an announcement of the adjourned date made at the Confirmation Hearing or posted at the courthouse at the Confirmation Hearing or at an adjournment thereof. Any objection to confirmation (i) must be made in writing, (ii) must specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or a description of the interest in the Debtor held by the objector, and (iii) must be timely made. Any such objections must be filed with the Bankruptcy Court and served so that they are received by the Bankruptcy Court, and the following counsel, on or before the date and time set forth in the accompanying notice:

> **Counsel to the Debtor**:
>
> Heller, Draper, Hayden, Patrick, & Horn, LLC
> Douglas S. Draper, La. Bar Roll No 5073
> William H. Patrick, III, La. Bar Roll No. 10359
> 650 Poydras Street, Suite 2500
> New Orleans, Louisiana  70130-6103
> Telephone: (504) 299-3300
> Fax: (504) 299-3399
>
> **Counsel to Secured Lender:**
> Andrews Kurth L.L.P.
> Monica S. Blacker
> 1717 Main Street, Suite 3700
> Dallas, Texas 75201
> Telephone: (214) 659-4400
> Fax: (214) 659-4401

## D.    CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan is (i) accepted by all impaired classes of claims or, if rejected by an impaired

class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) feasible, and (iii) in the "best interests" of creditors that are impaired under the plan.

## E.     UNFAIR DISCRIMINATION AND FAIR AND EQUITABLE TESTS

Under the Bankruptcy Code, a plan does not have to be accepted by every class of creditors or interest holders to be confirmed.  If a class of claims rejects a plan or is deemed to reject a plan, the plan proponent has the right to request confirmation of the plan pursuant to Section 1129(b) of the Bankruptcy Code -- the so-called "cramdown" provision of the Bankruptcy Code.  Section 1129(b) permits the confirmation of a plan notwithstanding the non-acceptance of such plan by one or more impaired classes of claims and interests.  Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class, and meets the other legal criteria for confirmation.

In the event that any Class of Claims or Partnership Interests fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and/or (b) modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

Accordingly, to obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Impaired, non-accepting Class.  The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable."  The Bankruptcy Code establishes "cram down" tests for classes of secured claims, unsecured claims and interests that do not accept the plan, as follows:

### 1.     Secured Creditors

Either (a) each impaired secured creditor retains the liens securing its secured claim and receives on account of its secured claim deferred cash payments (x) totaling at least the allowed

amount of the secured claim and (y) having a present value at least equal to the value of the secured creditor's collateral, (b) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (c) the property securing the claim is sold free and clear of liens with the secured creditor's lien to attach to the proceeds of the sale and such lien on proceeds is treated in accordance with clause (a) or (b) of this subparagraph.

### 2. Unsecured Creditors

Either (a) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim, or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan, and the "best interest" test is met so that each impaired unsecured creditor recovers at least what that creditor would receive if the case was converted to a chapter 7 case.

### 3. Holders of Interests

Either (a) each holder of impaired interests receives or retains under the plan property of a value equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) no holder of junior interests receives or retains any property, and the "best interest" test is met, so that each impaired interest holder recovers at least what that interest holder would receive if the case was converted to a chapter 7 case.

### 4. No Unfair Discrimination

In addition, the "cram down" standards of the Bankruptcy Code prohibit "unfair discrimination" with respect to the claims of any impaired, non-accepting class. While the "unfair discrimination" determination depends upon the particular facts of a case and the nature of the claims at issue, in general, courts have interpreted the standard to mean that the impaired, non-accepting class must receive treatment under a plan of reorganization which allocates value to such class in a

manner that is consistent with the treatment given to other classes with claims against the debtor of equal or junior status.

All Classes will receive distributions under the Plan; thus, no Classes are conclusively presumed to have rejected the Plan. The Debtor believes that the treatment of all Classes of Claims and Partnership Interests under the Plan satisfies the "no unfair discrimination" requirement for nonconsensual confirmation of the Plan under section 1129(b) of the Bankruptcy Code. With respect to each such Impaired, non-accepting Class, there is no Class of equal priority receiving more favorable treatment under the Plan, and no Class that is junior to such Impaired, non-accepting Class will receive or retain any property under the Plan on account of the Claims or Interests in such Class.

## F. FEASIBILITY

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless the liquidation of the debtor is provided for in the plan. Here, the liquidation of substantially all of the Debtor's assets is provided for in the Plan.

## G. BEST INTEREST TEST

In order to confirm a plan of reorganization, the Bankruptcy Court must determine that the plan is in the best interests of all classes of creditors and interest holders impaired under that plan. The "best interest" test requires that the Bankruptcy Court find that the plan provides to each member of each impaired class of claims and interests (unless each such member has accepted the plan) a recovery which has a value at least equal to the value of the distribution that each creditor or interest holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

All Classes of creditors will receive distributions under the Plan; thus, no Classes of creditors are conclusively presumed to have rejected the Plan. The Debtor requests confirmation of the Plan over the rejection of any Classes. In so doing, the Debtor seeks to establish that the Plan complies

with the best interest of creditors test with respect to any such Class or Classes, and satisfy all other legal criteria for confirmation.

As reflected in the discussion above, and as demonstrated in the Liquidation Analysis attached to this Disclosure Statement as Exhibit <u>D-2</u>, the Debtor believes that the Plan provides to each holder of a Claim and Partnership Interest holder a value at least equal to the value of the distribution that each holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

## H.  CERTAIN RISK FACTORS TO BE CONSIDERED

HOLDERS OF CLAIMS AGAINST AND PARTNERSHIP INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN (AND ANY DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE), BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  THESE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND THE IMPLEMENTATION OF THE PLAN.

## I.  CERTAIN BANKRUPTCY CONSIDERATIONS

### 1.  Risk of Liquidation of the Debtor's Estate

If the Plan is not confirmed and consummated, there can be no assurance that the Debtor's Chapter 11 Case will continue as a chapter 11 reorganization case rather than be converted to a chapter 7 liquidation case, or that any alternative plan of reorganization would be on terms as favorable or more favorable to holders of Claims and Partnership Interests as the terms of the Plan. If a liquidation under chapter 7 of the Bankruptcy Code or different reorganization were to occur, the distributions to certain holders of Allowed Claims or Allowed or Partnership Interests may be reduced, or possibly completely eliminated.  As previously noted, the Debtor believes that in a

liquidation under chapter 7, additional administrative expenses of a chapter 7 trustee and such trustee's attorneys, accountants, and other professionals, would cause a diminution in the value of the Debtor's Estate. In addition, certain additional Claims may arise in a chapter 7 liquidation and from the rejection of unexpired leases and other executory contracts in connection with any cessation of the Debtor's operations. As described above, this might negatively impact the amount of distributions under the Plan, if any, to holders of Allowed Claims or Allowed Interests. As a result of these circumstances, the Debtor believes that the Plan provides a significantly higher return to holders of Claims against and Partnership Interests in the Debtor, as compared to liquidation.

### 2. Uncertainty Regarding Objections to Claims

The Plan provides that certain objections to Claims can be filed with the Bankruptcy Court after the Effective Date. A creditor may not know that its Claim will be objected to until after the Effective Date. The Debtor and Reorganized Debtor do not intend to object to any Claims.

### 3. Performance of Obligations by the Reorganized Debtor under the Plan

Although the Debtor and the Reorganized Debtor believe that the Reorganized Debtor can successfully perform all of its obligations under its Plan, there can be no assurance that the Reorganized Debtor will do so.

## IX. CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any alternative. In addition, any other alternative would involve significant delay, litigation, uncertainty, substantial additional administrative costs. The Debtor urges holders of Impaired Claims and Impaired Partnership Interests against the Debtor to vote in favor of the Plan.

Dated: October 30, 2009

DISCLOSURE STATEMENT FILED BY:

*/s/ Jan M. Hayden*
Douglas S. Draper, La. Bar Roll No. 5073
Jan M. Hayden, La Bar Roll No. 6672
William H. Patrick, III, La. Bar Roll No. 10359
**Heller, Draper, Hayden, Patrick, & Horn, LLC**
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Telephone: (504) 299-3300/Fax: (504) 299-3399
Email:  ddraper@hellerdraper.com
            jhayden@hellerdraper.com
            wpatrick@hellerdraper.com

Counsel to Northcastle, Ltd., as the Debtor
and the Debtor in Possession